**UNITED STATES of America, Appellee,**

**v.**

**Michael David HENDERSON, Appellant.**

**No. 80–1790.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1981.

Decided April 8, 1981.

Robert D. Kingsland, U. S. Atty., St. Louis, Mo., Robert T. Haar, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Storment, Stegmeyer & Read, St. Louis, Mo., for appellant; Michael Henderson, Paul M. Storment, Jr., St. Louis, Mo., of counsel.

Before ROSS, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

A grand jury charged appellant Henderson in a one count indictment of knowingly and intentionally possessing with intent to distribute approximately 189 grams of co-

---

caine, in violation of 21 U.S.C. § 841(a)(1). Before trial, Henderson moved for the suppression of physical evidence and his own inculpatory statements, on the theory that these were fruits of an illegal arrest. The magistrate[1] recommended denying these motions, and the trial court[2] adopted this recommendation. At trial appellant's motions for directed verdict and judgment of acquittal were denied, and the jury returned a guilty verdict. Henderson received a twelve year sentence, to be followed by a special parole term of six years. He brings this timely appeal.

On March 28, 1980 a confidential source informed St. Louis police detectives that Henderson was using residences located at 5108 Wallingford and 1632 Ruedelle in St. Louis County to conduct cocaine distribution activities. On the basis of this information, police obtained search warrants for the two residences. Henderson does not challenge the validity of the warrants.

After obtaining the warrants, police and detectives went to 5108 Wallingford, and arrived at around 8:00 p. m. They observed a 1972 Gremlin in the driveway. The police had noticed the car before, and a check with the state department of revenue files had established that the car was registered to Michael David Henderson.

Instead of going in the house and conducting the search, the police waited for Henderson to exit. According to Detective Gober, the plan was for him to confirm the identity[3] of the driver as Michael Henderson, for police then to stop the car away from the residence, to inform Henderson of the existence of the search warrants, and to request his presence while the warrants were executed. Gober gave three reasons for the plan: to avoid destruction of property at the houses, to avoid destruction of the evidence sought, and to avoid violence. Police were aware that two women resided at 5108 Wallingford.

Henderson left the house at around 8:35 and drove away in the Gremlin. Gober identified the driver as Henderson. After Henderson had travelled about two to three miles, police were able to position cars so as to signal Henderson to stop with relative safety. Upon signal Henderson stopped and got out of his car.

According to police testimony, detectives Mokwa and Gober approached Henderson and told him that he had been stopped because detectives had a warrant to search 5108 Wallingford. The two detectives then noticed a plastic bag with a vegetable like substance protruding from Henderson's pocket, and they seized it and arrested Henderson for possession of marijuana. They then conducted a search of appellant's person and found a clear plastic bag containing white powder, which turned out to be cocaine.

Gober then informed Henderson of his *Miranda* rights, and Gober and another detective took Henderson to 5108 Wallingford. Henderson told the detectives the house belonged to "Mamie"; Gober then replied that there was a warrant nonetheless and they were looking for cocaine; and Henderson then said, "please don't scare the women there at the house, they're not involved in all of this, I'll give you what you want."

At the house, detective Hegger directed Henderson to the basement area, which was where the informant had specified that the drug activities took place. Henderson stated, "Before you start tearing the place up I'll show you what you're looking for." He directed Hegger to a brown shoulder bag, which contained cocaine and appellant's expired driver's license. Hegger next noticed drug paraphernalia on top of a washing machine. Appellant directed Hegger to a box of money, stating that he (appellant) wished to take it along for bond. Hegger opened the box and found $17,640.00, jewel-

---

1. The Honorable William S. Bahn, United States Magistrate.

2. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

3. Gober had a picture of Henderson; the two were not previously acquainted.

ry, a calculator, a list of names and numerical figures, and a safety inspection receipt. The shoulder bag and its contents, the drug paraphernalia, and the box and its contents (except the jewelry) were introduced into evidence at trial.[4]

At trial Henderson testified that one policeman pulled a gun after stopping him, and another handcuffed him. He further testified that the police threw him around the room at the house. He denied showing the officers the leather bag or the box.

On appeal Henderson contends first that the stop of his car was illegal, and that therefore his inculpatory statements and all physical evidence seized should have been suppressed. He also contends that the evidence was insufficient to sustain the verdict.

At the suppression hearing only police officers testified, not Henderson. The magistrate credited the police testimony. For purposes of this appeal, we accept his findings of fact that the stop of appellant and discovery of drugs on his person occurred essentially the way the police testified. Thus, there is no question but that the police officers properly arrested appellant once they observed the marijuana. The question is whether the initial stop was valid.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that the fourth amendment protections apply to a "stop and frisk" situation which is less than a complete arrest, and that the constitutionality of the stop and frisk depends upon the reasonableness of the police conduct in the circumstances:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion ... [I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable

caution in the belief' that the action taken was appropriate?

*Id.* at 21–22, 88 S.Ct. at 1879–80 (footnotes omitted).

In *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the Supreme Court also considered the constitutionality of an investigative stop. There the Court stated that in such cases a court should weigh "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* at 51, 99 S.Ct. at 2640.

■ We think that under the reasoning of *Terry v. Ohio, supra,* and *Brown v. Texas, supra,* the stop in the instant case fully comports with the requirements of the fourth amendment. First, the police had the information that Henderson was conducting drug activities at 5108 Wallingford, and they identified him as the person who left that house. Secondly, the stop itself was a minimal intrusion. At the time the police officers stopped Henderson, they intended only to inform him of the search warrants and to request his presence during the searches. Finally, the police plan was reasonable. If Henderson refused to accompany them, then they were in no worse position to conduct the searches. If he did consent to accompany them, then the possibilities of violence and destruction of the evidence would be avoided.

■ Henderson also contends that the evidence was insufficient to support the verdict. We find this contention to be without merit. The detectives seized a substantial quantity of cocaine, and it was Henderson who showed them where it was.

The judgment of the district court is affirmed.

---

4. The police also searched the house at 1632 Ruedelle, but found no cocaine there.