UNITED STATES of America, Appellee,

v.

Willie Edward BOYD, Appellant.

No. 82–1613.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1982.

Decided Dec. 27, 1982.

Rehearing Denied Jan. 26, 1983.

Certiorari Denied April 18, 1983.

See 103 S.Ct. 1794.

Thomas E. Dittmeier, U.S. Atty., Richard L. Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Terry L. Jones, Clayton, Mo., for appellant.

Before BRIGHT and ARNOLD, Circuit Judges, and HUNTER,* Senior District Judge.

ARNOLD, Circuit Judge.

Willie Edward Boyd appeals his conviction in the District Court [1] for possession with intent to distribute approximately eighty grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1976); possession with

---

\* The Hon. Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Hon. William L. Hungate, United States District Judge for the Eastern District of Missouri.

intent to distribute approximately thirty-two grams of heroin, in violation of 21 U.S.C. § 841(a)(1) (1976); and possession of a firearm (a machine gun) which was not registered to him, in violation of 26 U.S.C. §§ 5861(d), 5871 (1976). He was sentenced to a total of 18 years' imprisonment, to be followed by a special parole term of six years. His principal contention is that keys seized when he was initially detained should have been suppressed because they were obtained in the course of a warrantless arrest without probable cause in violation of the Fourth Amendment. Several of the keys opened the door and the gate of the house where the contraband was found. These keys, Boyd argues, were an important part of the Government's effort to prove that he was in possession of the contraband. We reject this argument and affirm.

During the week of October 12, 1981, St. Louis Police Detectives Robert Thomure and Nicholas Frederiksen received a tip that Boyd was engaging in drug traffic from 1212A Whittier and that he kept cocaine and heroin nearby at 1435 E. DeSoto. They conducted a surveillance of these residences and on October 20 they applied for and received a warrant to search the DeSoto home. Their affidavits in support of the search warrant included the following information:

1. The informant's tip that Boyd had been engaging in drug traffic and kept cocaine and heroin at 1435 E. DeSoto.

2. The informant had proved himself reliable by having provided information leading to over twenty felony arrests.

3. During the surveillance the police observed that Boyd frequented the DeSoto and Whittier residences.

4. Boyd had a reputation as a drug dealer.

5. There was a great deal of foot traffic at 1212A Whittier, and people would stay for a short while. Officer Frederiksen recognized that some of these people were drug users.

6. Boyd's car, a white Lincoln, was parked outside the DeSoto residence.

7. On at least two occasions Boyd went from the DeSoto residence to the Whittier residence.

8. On October 20, the confidential informant contacted Officer Thomure and told him that in the previous two days he had been in the Whittier and DeSoto residences. He described in detail the process of selling drugs at the Whittier residence and precisely how much was sold. He stated that he saw Boyd get cocaine and heroin from somewhere in the DeSoto house and take it to the Whittier residence.

9. Boyd was an associate of a known heroin distributor.

The following morning the police went to the DeSoto residence to execute the search warrant. Boyd had been at the residence but left before the search began. The police followed and stopped him several blocks away from the house and took him back in a police vehicle. They seized keys, a racquet ball bag, and approximately $2,700 in currency. The police then executed the warrant by going to the door, announcing they had a search warrant, and, receiving no response, forcing the door open. They found a loaded machine gun in the dining room and seized a quantity of cocaine from the refrigerator in the kitchen of the residence. Inside a tan travel bag on a kitchen countertop they discovered some heroin, along with lactose, quinine, and $1,303 in United States currency. A Drug Enforcement Administration (DEA) expert testified that the estimated value of the cocaine and heroin was approximately $12,000, and that the narcotics were intended for distribution. The DEA chemist identified lactose and quinine as adulterants for controlled substances (Tr. 259, 267). Drug paraphernalia were also seized, and a police fingerprint analysis found Boyd's fingerprints on three of the items (Tr. 281–82), one of which contained traces of heroin (Tr. 243). The officers then found some of his clothes (Tr. 47, 108), his driver's license (Tr. 48), and correspondence addressed to him at 1435 DeSoto (Tr. 336). The only person they found was Glenda Brown, Boyd's girlfriend.

After the initial discovery of narcotics, Frederiksen read Boyd his *Miranda* rights.

The government contends that the police lawfully detained and searched Boyd as an incident to the lawful search of his premises and in order to facilitate the search. We have reservations about this argument,[2] but need not address it because the police had probable cause to arrest Boyd. The keys were seized in the course of a lawful arrest and properly admitted into evidence. Moreover, there was ample other evidence to convict Boyd.

■ Probable cause "is to be assessed in terms of the circumstances confronting a reasonably cautious and prudent police officer at the time of the arrest . . . ." *United States v. McGlynn,* 671 F.2d 1140, 1143–44 (8th Cir.1982). The hearsay information, which police obtain from an undisclosed informant, may supply the probable cause necessary for a lawful arrest, *United States v. Scott,* 545 F.2d 38, 39 (8th Cir.1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977), as long as the standards set forth in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), are satisfied. See generally Hall, *Search and Seizure* §§ 5:15–5:28 (1982). The source must be credible, and the underlying circumstances through which he arrived at his information must be stated so that the validity of his conclusions can be ascertained. *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. at 1513; *United States v. Sumpter,* 669 F.2d 1215, 1219 (8th Cir.1982). The tipster should state how he received his information—whether he observed the defendant engaging in criminal activity or whether he participated in the crime. In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail as to indicate it is "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589. Even if the tip is found inadequate under *Aguilar,* it may still form the basis for probable cause if it is corroborated by independent sources. *Spinelli v. United States, supra.*

■ The informant's tip both meets the standards set forth in *Aguilar* and was sufficiently corroborated to form the basis for finding probable cause to arrest Boyd. The informant was credible, having in the past provided the police with tips leading to over twenty arrests. The informant gave a detailed description of the drug traffic and Boyd's involvement. Detective Thomure gave the following account of the informant's tip.

The informant advised that the way the selling of the drugs is done is that the buyer rings the inter-com, the people on the inside buzz the front door [letting] the buyer inside the front door. The buyer then enters the front door and upon confronting the stairs that lead to the second floor, the buyer is faced with a set of iron bars which is covered with a curtain. It is at this time the buyer

---

**2.** Neither *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1980) nor *United States v. Henderson,* 645 F.2d 627 (8th Cir.), *cert. denied,* 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981) support the government's argument. In *Summers* the police encountered the defendant as he was descending the steps of his home when they were about to execute a search warrant of his house. In determining whether detention was proper the Court looked to whether the limited intrusion was justified by special law enforcement interests and found that it was. The Court explicitly stated that "for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to *detain the occupants of the premises* while a proper search is conducted." 452 U.S. at 705, 101 S.Ct. at 2595 (footnotes omitted, emphasis added). The Court certainly did not sanction the search and seizure of residents who, at the time of the search, are several blocks from their home. Nor does *Henderson* support the government's position. There, the police officers, when they stopped the defendant, intended to inform him of the warrant to search his home and request his presence during the search. They arrested him after noticing that he was carrying a plastic bag filled with marijuana.

states the amount and type of drug he wishes to buy and then hands the money through the iron bars to the person on the other side of the curtain. The buyer then leaves without ever seeing the person who sold them the drugs.

\* \* \* \* \* \*

The Informant went on to [advise] that while he was at the house he observed [Willie] Boyd to leave the front room and went to some [unknown] place in the house and got a clear cellophane bag of white powder, which the informant identified as being Cocaine; The informant also stated that Boyd had a cellophane bag of numerous pink capsules that contained heroin. The informant advised that Willie Boyd then drove the Heroin and the Cocaine over to 1212 A. Whittier.

To a large degree this information was corroborated by police surveillance. Detectives Thomure and Frederiksen saw known drug addicts go to the Whittier residence for short time periods. They also saw Boyd go from the DeSoto residence to the Whittier residence on several occasions.

██ Even if the keys had been suppressed there still would have been abundant evidence to convict Boyd for possessing the contraband found at the DeSoto home. In the course of the search, the police seized a loaded machine gun, cocaine, heroin, lactose, quinine, narcotics paraphernalia, and currency. Boyd's fingerprints were found on some of the narcotics paraphernalia, and one of the items with his fingerprints contained traces of heroin. The police also found Boyd's clothes and driver's license. Moreover, a letter was addressed to him at the DeSoto residence. This evidence showed beyond a reasonable doubt that Boyd frequented the DeSoto residence and there made preparations for distributing heroin and cocaine.[3]

The judgment is affirmed.

---

**3.** When Thomure first stopped Boyd and advised him that he had a warrant to search the DeSoto residence, Boyd denied ever having been there (Tr. 59). Boyd now contends that this statement should have been suppressed because his *Miranda* warnings had not been given. This argument is without merit. Officer Thomure was by no stretch of the imagination interrogating Boyd. He could not have known that his comment would evoke an incriminating response. See *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

When Boyd saw men's clothing being removed from the DeSoto residence he said, "I see you're doing your shopping early." The police then asked what he meant and Boyd responded, "Those are my clothes" (Tr. 176, 222). This conversation transpired after Boyd's *Miranda* rights had been read, and Boyd had claimed his right to remain silent. He contends that his response should have been suppressed because the question constituted interrogation and violated his right to remain silent. This argument is equally without merit. Boyd initiated this conversation himself.

We also reject Boyd's arguments that the search warrant for the house was issued in violation of Missouri law and that the identity of the confidential informant should have been disclosed.