# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1619

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Southern District of Iowa. |
| | * | |
| Richard William Reed, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2002

Filed: July 29, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard William Reed appeals from his conviction for possession of counterfeit bills in violation of 18 U.S.C. § 472. We affirm.[1]

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

# I.

On August 13, 2001, Reed was arrested on a warrant unrelated to the present case. As Reed was being processed at the Polk County, Iowa, Jail, a detention officer noticed that some of the bills in Reed's wallet did not feel like real bills. The counterfeit bills found in the wallet, totaling $255, included two one-hundred dollar bills, two twenty-dollar bills, and three five-dollar bills. Each bill of like denomination contained an identical serial number. In addition, a genuine five-dollar bill in Reed's possession was found to be the master bill for the counterfeit five-dollar bills. The United States Secret Service was contacted, but by the time Secret Service agents examined the bills Reed had been released.

Special Agent Tony Every of the Secret Service tried unsuccessfully on two occasions to speak with Reed at his home. Every testified that on the first occasion, August 28, 2001, he and a fellow agent went to Reed's residence. No one responded to Every's ringing of the doorbell and his knocking on the door, notwithstanding the fact that there were cars parked outside the residence and the lights and TV were on within the house. The agents then left the premises and kept the home under surveillance from around the corner of the block. Upon noticing an individual leaving the residence, Every asked the person whether Reed was in the home. Every then again rang the doorbell and knocked on the door, once again receiving no response.

Every then contacted Reed's mother and girlfriend, informing them that he wanted to speak with Reed , giving them his name and phone number and asking that they have Reed contact him immediately.

Every, accompanied by two other agents, returned to Reed's residence on September 11. Upon seeing an individual enter the garage on the property, they knocked on the garage door, announced their identity, and stated that they needed to

speak to the person within the building.  Upon receiving no response, the agents left the premises.

Every eventually arrested Reed on October 4, 2001, when Reed appeared at an appointment with his state parole officer.

Every testified that at the time of his arrest Reed told him that he had received the counterfeit bills as part of the cash paid to him by a man who purchased a go-cart Reed was selling.  Every also testified that Reed did not give him a description of the purchaser other than that he was male, that Reed did not relate the circumstances surrounding his discovery of the fact that he had been paid partially in counterfeit bills, and that Reed did not seem upset that he had been cheated.  Every testified that when he asked Reed why he had not contacted him, Reed stated that he did not know that Every was looking for him.

Reed and his mother testified that on the evening of August 12, 2001, Reed sold a go-cart for cash to a man they had not seen before nor since.  Reed testified that he discovered sometime early the next day that he had been paid partly in counterfeit bills.  Reed also testified that he never contacted a bank, the police, or the Secret Service about the counterfeit bills.  He also never mentioned the bills at the time of his unrelated arrest on August 13, 2001.  Reed acknowledged that his mother and girlfriend had told him about Every's message that he needed to speak with Reed and that his mother had given him Every's phone number.  Reed explained that his failure to cooperate with Every stemmed from his anger at the Polk County Jail officials' refusal to return his genuine currency to him following his release from the jail.[2]

_____

[2]Reed also testified that he in fact did try to call the number that Every left with his mother but only reached voice mail and never left a message.

**II.**

The government must prove beyond a reasonable doubt that a defendant charged with possession of counterfeit currency in violation of 18 U.S.C. § 472 knowingly possessed counterfeit money with the intent to defraud. See United States v. Pitts, 508 F.2d 1237, 1239 (8th Cir. 1974). Reed contends that the evidence adduced at trial was insufficient to support the jury's guilty verdict. "In evaluating the sufficiency of the evidence supporting a jury verdict against a defendant, we review the evidence in the light most favorable to the government and give the government the benefit of all inferences that reasonably may be drawn from the evidence." United States v. Ortiz-Martinez, 1 F.3d 662, 668 (8th Cir. 1993) (citing United States v. Drews, 877 F.2d 10, 13 (8th Cir. 1989)).

Reed admitted that he knowingly possessed counterfeit bills. Thus, the only disputed element of the crime was whether Reed had the requisite intent to defraud. The government's evidence was strictly circumstantial. See United States v. Armstrong, 16 F.3d 289, 292 (8th Cir. 1994) (stating that essential elements of counterfeiting "offenses are seldom provable by direct evidence").

Reed argues that the only evidence of his guilt was what came to light on cross-examination when he chose to testify on his own behalf. Thus, he concludes that the evidence is insufficient because the government is required to have presented evidence other than his denial of his guilt. Reed is correct that the government may not rely solely on the jury's disbelief of a defendant's denials to meet its burden of proof. See United States v. Davidson, 122 F.3d 531, 536 (8th Cir. 1997) (citing United States v. Brown, 53 F.3d 312, 314-25 (11th Cir. 1995); United States v. Zafiro, 945 F.2d 881, 888 (7th Cir. 1991)). However, "[w]hen there is other corroborative evidence of guilt, the jury can properly draw an inference of guilt from its disbelief of the defendant's denials." Id.

The government argues that Reed's avoidance of Every is corroborative evidence of intent. Reed characterizes his reluctance to speak with Every as an assertion of his Fifth Amendment privilege against self-incrimination. Reed also attempts to distinguish Pitts, 508 F.2d at 1240, on which the district court relied. Although not directly on point, Pitts does establish that furtive conduct in the face of police interest in counterfeiting activities is probative evidence of intent to defraud. Id. The government argued to the jury that a person who has been defrauded of $255 is not acting with an innocent mind when he seeks to avoid the very law enforcement officials charged with the task of remedying the wrong allegedly perpetrated against him. Although we acknowledge that Reed had no obligation to speak with Every, we find that the jury could properly consider his reluctance to do so as circumstantial evidence of Reed's intent to defraud in the circumstance of this case.

Reed disputes the government's reliance on the presence of the master bill because the government presented no evidence that any counterfeit bills generated from the master bill were passed. In this way, Reed attempts to distinguish United States v. Malone, 49 F.3d 393, 397 (8th Cir. 1995), in which we found that a "jury could also reasonably find that Malone had the intent to defraud, based on Malone's possession of the master bill used for the counterfeit bills recovered from the bars." Although the jury may certainly have accorded less weight to Reed's possession of the master bill in the absence of any passed bills, it could still consider his possession of the master bill as circumstantial evidence of his intent to defraud.

Finally, in Armstrong, we acknowledged that separation of counterfeit bills from genuine bills is evidence from which a jury may infer guilty knowledge. 16 F.3d at 292. Guilty knowledge requires not only that the defendant knew the bills were counterfeit, but that he possessed them with the intent to defraud. Reed himself provided evidence that he kept the counterfeit and genuine bills separated in his wallet. Thus, the jury was entitled to infer from that action an intent to defraud.

-5-

In light of the corroborative evidence recited above, we find that the jury could properly draw an inference of guilt based on its disbelief of Reed's denial of any intent to defraud. Accordingly, although the government's evidence was certainly less than overwhelming, it was sufficient to support the jury's verdict.

The conviction is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.