# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————————

No. 02-2325

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| | * | |
| John Barry Briley, | * | |
| | * | |
| Appellant. | * | |

———————————

Submitted: November 5, 2002
Filed: February 14, 2003

———————————

Before HANSEN, Chief Judge, BEAM and RILEY, Circuit Judges.

———————————

HANSEN, Circuit Judge.

A jury found John Barry Briley guilty of possessing counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472. On appeal, Briley argues that the district court abused its discretion in admitting certain evidence, and he challenges the sufficiency of the evidence supporting his conviction. For the reasons stated below, we affirm the judgment of the district court.[1]

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

I.

After receiving a tip that an individual who drove a tan Dodge pickup truck was manufacturing methamphetamine out of a mobile home in Calion, Arkansas, the local authorities placed the residence under surveillance and obtained a warrant to search the home. Prior to executing the warrant, the authorities observed the defendant exit the mobile home and leave in a tan Dodge pickup. Officers trailed Briley to a convenience store near the main highway where Briley used a pay phone to place a call. The surveilling officers radioed Deputy Sheriff Ken Jones to inform him of their observations and whereabouts. Deputy Jones arrived shortly thereafter and began trailing Briley. When Briley began driving back toward his residence, Deputy Jones decided to stop him. He had no warrant for Briley's arrest, nor did he observe Briley commit any traffic offense. Deputy Jones testified that he did not intend to arrest Briley and that he had stopped him because Jones was concerned about the safety of the officers executing the warrant: Briley had told the informant that the mobile home was "rigged to explode" and that if the police had tried to arrest him he could detonate the mobile home upon the push of a button. Deputy Jones testified that he also wanted to inform Briley of the impending search and to request that he be present when the officers executed the warrant.

When Deputy Jones displayed his lights to initiate the stop, Briley fled, and a high-speed chase ensued. The chase ended after Briley lost control of his vehicle and crashed it into a brush pile near his residence. The defendant then attempted to flee on foot, only to be apprehended 50 to 70 feet from his truck. The authorities found a wallet on the ground between the truck and the point where Briley was apprehended. The wallet contained a counterfeit driver's license with Briley's picture but in the name of "Rodney Sterling" and a counterfeit $20 Federal Reserve Note.

Upon executing the warrant at Briley's residence, the authorities found 48 additional counterfeit $20 notes in the pocket of a pair of jeans in the bedroom, a

computer and color printer, and a printout containing the images of other counterfeit driver's licenses. The next day, Deputy Jones relinquished custody of all the counterfeit currency to Secret Service Agents Racek and Harlan. The 49 counterfeit notes had only four different serial numbers. Agent Harlan counted and recorded the number of notes corresponding to each serial number and provided Jones with a receipt for the currency. Agent Racek initialed and dated the border of each note. Upon returning to the Secret Service office in Little Rock, Agent Racek sorted the notes into five envelopes: the single note found in Briley's wallet was placed into one envelope, and the 48 other bills were placed into one of the four other envelopes each of which corresponded to one of the four different serial numbers. Agent Racek also conducted a Mirandized interview with Briley, and Briley told the agent that he had produced the counterfeit notes on his home computer and that a Mr. Murphy had agreed to pay him 25 cents on the dollar for the counterfeit currency.

## II.

Briley raises challenges to the admission of certain evidence. Specifically, he argues that the district court abused its discretion by admitting into evidence the 48 notes found in his residence because the government failed to establish a proper chain of custody, that the district court abused its discretion in admitting into evidence the contents of his wallet because they were the product of an illegal traffic stop, and that the district court abused its discretion in admitting into evidence the driver's license found in his wallet, the computer, printer, and printout found in his residence because this evidence was irrelevant and more prejudicial than probative. We afford great deference to the district court's evidentiary rulings, reversing only where there has been a clear abuse of discretion. See United States v. Miller, 994 F.2d 441, 443 (8th Cir. 1993).

Briley first argues that the counterfeit notes contained in the five envelopes lacked a proper chain of custody and should not have been admitted into evidence.

3

As a general rule, the district court may admit physical evidence if there is a reasonable probability that the evidence has not been changed or altered. Id. "Moreover, the integrity of such evidence is presumed to be preserved unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with." Id. Briley has made no showing of ill will or tampering. Moreover, any defect in the chain of custody goes more to its weight than its admissibility. United States v. Vallie, 284 F.3d 917, 920 (8th Cir. 2002). The receipt Agent Harlan gave Deputy Jones, admitted as Defendant's Exhibit 1, showed that 17 bills shared serial number AA59919643B and that 14 bills shared serial number AF91254332E. At trial, however, 13 bills had serial number AA59919643B and 18 bills had serial number AF91254332E; but the total number of notes seized, 49, equaled the total number of notes the government attempted to introduce. One need not be John Nash, Jr. to understand what happened here. Agent Racek testified that in this case the agents had made a clerical error when they initially counted and sorted the notes, attributing four too many bills to one serial number and four bills too few to a different serial number. The error was corrected in the Secret Service's internal records, but the Secret Service did not alert Deputy Jones so that he could correct his external receipt.

Agent Racek's testimony created a reasonable probability that the counterfeit notes admitted into evidence were the same notes seized the night of Briley's arrest. Agent Racek gave detailed testimony explaining the Secret Service's internal tracking procedures to maintain the chain of custody for counterfeit notes and explained in great detail how the clerical error in this case occurred and was subsequently corrected. He also testified that despite these clerical errors, he was certain that the notes introduced at trial were the same notes seized because each of the 49 notes bore his initials and were dated. We thus conclude that the district court did not abuse its discretion in admitting the counterfeit notes into evidence. See Miller, 994 F.2d at 443 (stating that the government could have easily avoided chain of custody issues by having the officer who handled and initialed the exhibit testify at trial); United States v. Pressley, 978 F.2d 1026, 1028 (8th Cir. 1992) (concluding that the district

court did not abuse its discretion in admitting evidence where the officer who marked the evidence at the time of the seizure testified that the evidence admitted bore those same marks).

Briley next contends that the district court erred in admitting into evidence the counterfeit bill and counterfeit license found in his wallet because both pieces of evidence were fruits of an illegal stop. We disagree. An investigative stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity. United States v. Mora-Higuera, 269 F.3d 905, 909 (8th Cir. 2001), cert. denied, 123 S. Ct. 123 (2002). "There is no requirement that there be a traffic violation." Id. Here, based on the informant's tips, Deputy Jones had probable cause to believe that Briley was manufacturing and distributing methamphetamine. Indeed, Deputy Jones had just obtained a warrant to search Briley's premises for evidence of contraband. To safely execute the warrant, Deputy Jones decided that it would be best to inform Briley of the search and request that he be present during the search. We have upheld the constitutionality of a traffic stop in nearly identical circumstances. See United States v. Henderson, 645 F.2d 627, 629 (8th Cir.) (concluding that traffic stop comported with Fourth Amendment where authorities had warrant to search defendant's residence for evidence of drug contraband and where surveilling officers trailed defendant from his residence and initiated traffic stop for the purpose of informing defendant of the search warrant and request his presence at the residence when the officers executed the warrant), cert. denied, 454 U.S. 829 (1981). Pursuant to Henderson, we conclude that the traffic stop here did not violate Briley's right to be free from unreasonable seizures.

Independently, even if the stop violated Briley's Fourth Amendment rights, the admission of the evidence obtained was harmless beyond a reasonable doubt. See Chambers v. Maroney, 399 U.S. 42, 53 (1970) (noting that evidence admitted in violation of the Fourth Amendment is subject to harmless error review). The

government introduced evidence independent of the evidence found as a result of the traffic stop that supports the jury's verdict, including: 48 counterfeit notes found in Briley's residence, the computer and printer that Agent Racek testified was capable of producing these notes, and the printout which connected Briley to the computer. In addition, Agent Racek testified that Briley had confessed to manufacturing and possessing the notes for the purpose of selling them to a Mr. Murphy. There was no reversible error here.

We also reject Briley's argument that the counterfeit license found in his wallet, the printout, and the computer and printer seized at his residence should not have been admitted into evidence because they were more prejudicial than probative. "In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination." United States v. Claxton, 276 F.3d 420, 422 (8th Cir. 2002) (internal marks omitted). Agent Racek testified that it was likely that the counterfeit notes had been printed using the computer and printer found in Briley's residence. The printout found next to the computer contained images of counterfeit licenses each bearing Briley's picture. One of the counterfeit licenses on the printout was substantially similar to the counterfeit driver's license found in Briley's wallet. Thus, the counterfeit license, printout, computer, and printer were each highly probative of possession because each piece of evidence linked Briley to the counterfeit note found in his wallet and the counterfeit currency found in the residence. Because the district court gave a limiting instruction to the jury that it was not to consider any of this evidence except insofar as it related to the possession of counterfeit currency, we cannot say that the district court abused its discretion in admitting this evidence.

Finally, we also reject Briley's argument that the district court erred in denying his motion for judgment of acquittal based on the insufficiency of the evidence. "In evaluating the sufficiency of the evidence supporting a jury verdict against a defendant, we review the evidence in the light most favorable to the government and

give the government the benefit of all inferences that reasonably may be drawn from the evidence." United States v. Reed, 297 F.3d 787, 789 (8th Cir. 2002). In light of the discussion of the evidence above, we conclude that this argument is without merit.

## III.

For the reasons discussed above, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7