**STATE of Minnesota, Respondent,**

v.

**Dale Edward AILPORT, Appellant.**

No. C5–87–454.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Denied Nov. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert Carolan, Dakota Co. Atty., Mark N. Lystig, Asst. Co. Atty., Hastings, for State of Minnesota, respondent.

Paul W. Rogosheske, Thuet, Lynch, Pugh & Rogosheske, South St. Paul, for Dale Edward Ailport, appellant.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN,* JJ.

## OPINION

LOMMEN, Judge.

Appellant Dale Ailport was convicted of possession of a schedule I controlled substance (LSD) with intent to distribute, receiving stolen property, and possession of a stun gun by a felon, in violation of Minn. Stat. §§ 152.09, subd. 1(1), 152.15, subd. 1(2) (1984); Minn.Stat. § 609.53, subd. 1(1) (1984); and Minn.Stat. §§ 624.731, subd. 3(b) and 624.713, subd. 1(b) (1984 and Supp. 1985). Appellant claims his arrest was not supported by probable cause and the trial court erred in not suppressing the evidence found in and on the car and inside the suitcase in the car trunk. We affirm.

## FACTS

In September, 1985, Gregory Grose, Assistant Chief of the Lakeville Police Department, began investigating appellant's activities at a Lakeville motel, where appellant had been staying on and off for approximately two weeks. Appellant registered at the motel, identifying himself as the operator of a limousine service, and reserved a room with a whirlpool and paid in advance in cash. During his stay at the motel, he was accompanied by two young females. During the course of appellant's stay, several men were observed entering and leaving appellant's room at unusual intervals. Neither appellant nor the females had any luggage. Grose contacted the Bureau of Criminal Apprehension (BCA), and inquired about appellant. He was informed the BCA was acquainted with appellant, believed he was a fence and involved in narcotics sales, and was also dangerous and known to carry weapons.

After appellant had checked out of the motel, the manager told Grose the motel

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

staff had seen a great deal of pornographic materials and a VCR in appellant's room. The manager was suspicious of appellant's activities, because the bed had never been used during appellant's two week stay at the motel, although the hot tub appeared to have been used.

On October 7, 1985, the motel management informed the Lakeville Police that appellant had again reserved a motel room with a hot tub. BCA agent John Edwards was contacted. Agent Edwards went to the motel and learned appellant had rented the only two rooms which contained hot tubs for one week; rooms 212 and 226.

At approximately 9:00 p.m. a chauffeur driven limousine with a male and female passenger arrived at the motel. The chauffeur entered the motel and registered the male passenger, Robert McIntosh, into Room 212. The bellman observed neither passenger had any luggage. The chauffeur also left specific instructions with the motel that no telephone calls were to be forwarded to Room 212, other than any calls from appellant. Agent Edwards obtained descriptions of the male and female passengers from the bellman and motel manager. The male passenger was described as approximately 25–30 years old, six feet, wearing a black motorcycle-type jacket and blue jeans. The female passenger was described as approximately 15 years old, five feet, 110 pounds. While Edwards was talking with the manager, the occupants of Room 212 called the front desk on two separate occasions. In the first call the occupants requested either red light bulbs or dimmer-low wattage bulbs to replace the room lights. In the second call the occupants requested candles be sent to the room. After the first request, the bellman was sent to the room with standard light bulbs. When the door was answered, he saw that the male was wearing only a towel and both people were apparently drinking alcohol.

That same evening, agent Edwards sought a search warrant to search: (1) Room 212 of the Lakeville motel for juvenile females and any records, notations, miscellaneous writings or documents which would evidence the age or status of the females or demonstrate prostitution activity or criminal sexual conduct in the first degree; and (2) the white female (juvenile) approximately 15 years old, and documents which evidence her age or status. The search warrant was approved.

At approximately 2:30 a.m., Agent Edwards and officers from the Lakeville Police Department and the Dakota County Sheriff's office proceeded to the motel in a group of four or five one-man squad cars to execute the warrant. The officers were informed of suspected evidence of juvenile prostitution and of appellant's likely involvement in narcotics. At approximately the same time the squad cars arrived, appellant entered the motel parking lot, driving an older model Toronado with a female passenger. Appellant looked around at all the police vehicles and allegedly appeared extremely nervous and made furtive movements as if putting or storing objects underneath the front seat. Agent Edwards then recognized appellant and directed he be stopped and detained. Because of appellant's past criminal history, including convictions for violent offenses, the police used extreme caution. Officer Dau of the Lakeville Police and other officers ordered appellant and his passenger out of the car at gun point. They were searched for weapons, handcuffed and placed in separate squad cars. Appellant was carrying a motel key for Room 212.

The search of the motel room then proceeded. The officers found three males and three females in Room 212. An 18–year–old girl was found wearing only a towel. Two minor girls, age 17 and 13, were fully clothed. The officers found significant quantities of controlled drugs and drug paraphernalia in the room. The "client" of the chauffeur service, Robert McIntosh, was also only clothed in a hotel towel. The chauffeur of the limousine was also in the room at the time the search warrant was executed.

Agent Edwards directed appellant be arrested and his car be towed to the police garage. Officer Dau called a towing service and prior to the arrival of the tow

truck, conducted an inventory search of the vehicle pursuant to a standard policy which required that a tow and impound sheet be completed on every vehicle towed in the City of Lakeville. In completing the inventory search, the officer searched the interior of the car, the glove compartment and the trunk. Inside the trunk was a closed but unlocked suitcase which Officer Dau opened. Inside the suitcase was a locked blue bank bag, a videocassette recorder, from which the serial number had been removed, seven x-rated video movies, and a brown paper bag containing personal items and a stun gun. The car was then towed to the police garage where a complete inventory search and report were completed by Officer Dau pursuant to the standard policy of the Lakeville Police Department. Appellant claimed ownership of the suitcase, but disclaimed ownership or knowledge of the locked bank bag. One of the keys found on appellant fit the lock of the bank bag.

A search warrant was obtained for the bank bag. Inside the bag was $1,500 in cash, and several types of drugs, including methamphetamine, LSD, psilocyn and marijuana. Special Agent James Johnson of the BCA was also called to examine the car. The examination revealed the vehicle's identification number had been altered and the car was not a 1975 car, as registered, but was instead a 1977 automobile which had been stolen in 1983.

Appellant was subsequently charged with the following 11 offenses: possession of methamphetamine with intent to distribute, possession of LSD with intent to distribute, possession of psilocyn with intent to distribute, possession of marijuana, theft, receiving stolen property (the car), possession of a stun gun by a felon, promotion of prostitution by one under 16, promotion of prostitution by one at least 16 but less than 18, promotion of prostitution by trick, and hiring a prostitute.

Appellant moved to suppress the evidence obtained as a result of his arrest and the subsequent search of the car and for dismissal of all charges. The trial court denied the motion to suppress the evidence, but dismissed the charges relating to prostitution for lack of probable cause.

Appellant agreed to stipulate to the submission of the State's case to the court on three charges; possession of LSD with intent to distribute, receiving stolen property, and possession of a stun gun by a felon. On January 4, 1987, appellant was found guilty of the three offenses and sentenced.

## ISSUES

1. Should the evidence have been suppressed because the seizure of appellant was unreasonable and his subsequent arrest illegal?

2. Did the trial court err in not suppressing the evidence found in and on the car and inside the suitcase in the car trunk because the search was conducted without a warrant and without probable cause?

## ANALYSIS

### I.

Appellant claims the evidence in this matter should have been suppressed because the seizure and arrest of appellant were illegal and not supported by probable cause. Appellant claims he was illegally arrested when the officer stopped his vehicle, ordered him out of the car at gun point, searched and handcuffed him and placed him in the locked backseat of a squad car. The State asserts appellant was only detained at this point and was formally arrested after the subsequent search of the motel room revealed the drugs and the three females, two of which were minors.

Generally, "[a]n arrest takes place when officers restrain a suspect's liberty of movement." *State v. Lohnes*, 344 N.W.2d 605, 610 (Minn.1984). However, there is often a fine line between an arrest and an investigatory detention. The actions of the police officer must be judged according to the circumstances existing at the time. *State v. O'Neill*, 299 Minn. 60, 68, 216 N.W.2d 822, 827 (1974). The extent to which officers use force to detain or stop a suspect is not the sole determining factor whether or not the police actions amounted

to an arrest. *Id.* 216 N.W.2d at 828. An officer is justified in proceeding cautiously with weapons ready if he is making a reasonable investigatory stop and has cause to believe an individual may be armed. *Id.*

This court finds that when appellant pulled into the motel parking lot at the same time the officers were about to execute the search warrant, the officers had justification to stop, frisk and detain appellant for at least three reasons:

(1) to prevent flight in the event incriminating evidence was found when executing the search warrant on the motel room;

(2) to prevent appellant from alerting or warning the occupants of the motel room of the police's presence, which could lead to efforts to conceal or destroy evidence; and

(3) minimize the risk of harm to officers, since appellant was believed to be armed and dangerous and had a prior felony record.

*See generally Michigan v. Summers,* 452 U.S. 692, 702–03, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981). In *Summers* the United States Supreme Court upheld the "seizure" of a defendant which occurred as the police encountered the defendant descending the front steps to his house, as the police were about to execute a search warrant for the house to search for narcotics. The Supreme Court found that police actions of detaining the defendant, which the court assumed was unsupported by probable cause, amounted to reasonable pre-arrest "seizure" even though appellant was not free to leave while the officers were searching his home and was not formally arrested until after the search of his home revealed narcotics. The court explained that for fourth amendment purposes, a warrant to search for contraband implicitly provides limited authority to detain occupants while a proper search is conducted. *Id.* at 705, 101 S.Ct. at 2595.

Although the police actions in the motel parking lot were more intrusive and restrictive on the liberties of appellant, than what occurred in *Summers,* and appellant was not departing from his residence, but apparently proceeding to the motel rooms which he had earlier reserved, this court finds under the totality of the circumstances appellant's forcible detention in the parking lot amounted to a reasonable pre-arrest seizure, not an arrest. Appellant was described to the officers as a very rough-looking individual, who was believed to be dangerous, was known to carry weapons, and believed to be a fence and involved in narcotics sales. Agent Edward's affidavit submitted with the search warrant indicated appellant had a violent criminal history containing convictions for offenses of aggravated robbery, burglary, narcotics, and possession of a firearm by a felon. In light of appellant's background, his sudden and apparently unanticipated arrival immediately prior to execution of the warrant, and his nervous and furtive movements after observing the police, there was reasonable justification for the officer's restrictive and forceful detention and seizure of appellant. In *Summers,* the United States Supreme Court noted the risk of harm to both the police and other parties is minimized if officers exercise unquestioned command of the situation. *Id.* at 702–03, 101 S.Ct. at 2594.

Appellant was formally arrested after the search of the motel room. Appellant claims the arrest was made without probable cause. Probable cause for an arrest exists where the circumstances would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that a crime has been committed by the defendant. *State v. Liggons,* 348 N.W.2d 785, 787 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. July 26, 1984). Probable cause for an arrest is something more than mere suspicion, but less than evidence which would sustain a conviction. *State v. Fish,* 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968). In examining the validity of a probable cause arrest an appellate court "should not be overly technical, but should accept the officer's on-the-scene probable-cause assessment if reasonable men would under the same circumstances make the same determination * *."

*State v. Compton,* 293 N.W.2d 372, 375 (Minn.1980).

■ The arrest of appellant after the search of the motel room was supported by probable cause. Appellant had reserved the motel room and had a key to the room in his possession. The chauffeur to appellant's limousine service had registered the alleged "client" of the service and was in the room at the time the search warrant was executed. Only appellant's calls were to be forwarded to the room. The search revealed various drugs and drug paraphernalia. The officers were informed of appellant's likely involvement in drug sales. There were two minor females in the room and an 18–year–old woman clad in a towel. The "client" of the service was also only wearing a towel. The occupants had earlier requested either red light bulbs or low wattage bulbs, and later requested candles. Officer Edwards was familiar with appellant's prior suspicious activities at the motel. Based upon the totality of the circumstances, the police could reasonably entertain an honest and strong suspicion appellant was a participant in the commission of criminal activities. The trial court did not err in failing to suppress evidence because the seizure of appellant was reasonable and his subsequent arrest was supported by probable cause.

## II.

■ Appellant claims the court erred in not suppressing the evidence found in and on the car and in appellant's suitcase because the search was conducted without a warrant and without probable cause. Appellant strongly urges this court to find that the fourth amendment principles set forth in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); and *State v. Filipi,* 297 N.W.2d 275 (Minn. 1980), which govern searches of closed trunks, suitcases and duffel bags conducted solely for purposes of investigating criminal conduct, are applicable to the facts in this matter. However, we conclude the evidence at issue was obtained through a good faith inventory search of appellant's car pursuant to the Lakeville Police Department's standard procedure and therefore the principles set forth in *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) and *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) are instead applicable.

In *Bertine* the defendant was arrested for driving while under the influence and taken into custody. Prior to the arrival of a tow truck, which was called to take the defendant's van to an impoundment lot, one of the officers inventoried the contents of the van and opened a closed backpack and found controlled substances, cocaine paraphernalia, and a large amount of cash. Appellant was subsequently charged with driving while under the influence of alcohol, and numerous drug charges. The United States Supreme Court upheld the validity of the inventory search and explained that inventory searches are an exception to the warrant requirement of the fourth amendment. *Bertine,* —— U.S. at ——, 107 S.Ct. at 741. The court held inventory procedures administered in good faith and conducted pursuant to standardized criteria, and not for the sole purposes of investigation, satisfy the fourth amendment. *Id.* at ——, 107 S.Ct. at 742. The court reaffirmed the principle that police officers must be guided by a single familiar standard when faced with limited time and expertise to balance the individual and social interest involved in the wide variety of specific circumstances they confront. *Id.* at ——, 107 S.Ct. at 743.

In this case, after appellant's arrest, Officer Dau was directed to impound the car. Officer Dau then called a towing service and prior to the tow truck's arrival, completed a tow and impound sheet pursuant to a standard Lakeville Police Department policy which is done on every vehicle towed in the City of Lakeville. In completing the sheet, the officer conducted an inventory search of the trunk, interior of the car, and glove box and listed items which would be movable either by himself or the tow service. During this inventory, Officer Dau opened and searched the unlocked suitcase

in the trunk. The car was subsequently towed to the Lakeville Police garage where a complete inventory search and report were completed by Officer Dau. Special Agent James P. Johnson was also called to examine the car and it was discovered the vehicle identification number had been altered and the car had been stolen in 1983.

The discovery of the stun gun, the blue bank bag and the stolen car arose out of a good faith inventory search conducted pursuant to the police department's standard policy. It appears this procedure was designed to secure and protect the vehicle and its contents within police custody. The LSD in the locked bank bag was found after a warrant was obtained to search the bag. The validity of that warrant is not challenged on appeal. There is no indication the police conducted the search in bad faith or for the sole purpose of investigation, or the inventory search was *not* conducted pursuant to standard procedures. We find the fourth amendment of the United States Constitution and the Minnesota Constitution have not been violated by the inventory search.

### DECISION

The trial court did not err in failing to suppress the evidence because the seizure of appellant was reasonable, his subsequent arrest was legal and the evidence was obtained pursuant to a good faith standard inventory search.

Affirmed.