STATE of South Dakota, Plaintiff
and Appellee,

v.

Roger G. FLITTIE, Defendant
and Appellant.

No. 15736.

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1988.

Decided June 8, 1988.

Robert Mayer, Asst. Atty. Gen., for plaintiff and appellee, Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Patrick M. Schroeder, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

MILLER, Justice.

Roger G. Flittie (defendant) appeals his conviction on grand theft and petty theft charges. We affirm in part, reverse in part and remand for re-sentencing.

ISSUES

Defendant, both through counsel and pro se, raises several issues in this appeal. We hold that the majority of the issues are totally lacking in merit. (Specifically, through his counsel, he claims that (1) the trial court erred in refusing his proposed jury instructions 3, 4, 5 and 7; and (2) his due process rights were violated by charg-

ing more than one offense in a single count in the indictment. In his pro se brief, defendant argues that (1) the trial court erred in denying his motion to dismiss the Part II habitual offender information as defective; (2) State failed to meet its burden of proof; (3) the trial court erred in denying a proposed jury instruction to the effect that an essential element of grand theft by receiving stolen property is that he was a dealer of such property; (4) the trial court erred in excluding the testimony of one of his witnesses, Hazel Bonner; and (5) the trial court abused its discretion by allowing defendant's testimony to be impeached by his prior felony convictions.) Those issues are affirmed on the basis of settled law, no abuse of discretion, and clearly sufficient evidence to support the trial court's holdings.

The remaining issues raised by counsel are (1) whether the trial court erred in failing to consider two prior convictions as arising out of the same transaction, and (2) whether the trial court erred in refusing to suppress evidence found in the trunk of a vehicle.

### ISSUE I

WHETHER THE TRIAL COURT ERRED IN REFUSING TO CONSIDER DEFENDANT'S CONVICTIONS FOR CONSPIRACY TO COMMIT MURDER AND ACCESSORY AFTER THE FACT TO MURDER AS ARISING OUT OF THE SAME TRANSACTION.

The Part II habitual offender information, under which defendant was sentenced, related to three prior convictions, to-wit: possession of marijuana with intent to distribute (United States District Court); conspiracy to commit murder; and accessory after the fact to murder.

SDCL 22-7-9 states as follows:

A prior conviction may not be considered under either § 22-7-7 or § 22-7-8 unless the defendant was, on such prior conviction, discharged from

prison, jail, probation or parole within fifteen years of the date of the commission of the principal offense. *In addition, only one prior conviction arising from the same transaction may be considered.* (Emphasis added.)

Defendant principally argues that the trial court improperly considered the conspiracy to commit murder and accessory after the fact to murder as separate convictions for the purpose of sentencing. State, quite properly, concedes that the two offenses arose out of the "same transaction."

It is clear from our prior holding in *State v. Flittie*, 318 N.W.2d 346 (S.D.1982), that the conviction on the conspiracy charge was based on the same post-murder conduct as the accessory after the fact charge. Therefore, the sentence must be reversed and the case remanded for re-sentencing.[1]

### ISSUE II

WHETHER THE TRIAL COURT ERRED BY REFUSING TO SUPPRESS EVIDENCE FOUND IN THE TRUNK OF A CAR OPERATED BY DEFENDANT AT THE TIME OF HIS ARREST ON OTHER CHARGES IN ANOTHER COUNTY.

A factual recitation is necessary to put this issue in its proper perspective.

Beginning in July, 1984, defendant met intermittently with one Ron Sweel (Sweel) at Canyon Lake Park in Rapid City, Pennington County, South Dakota. At a September 2, 1984, meeting, defendant told Sweel that he needed a typewriter and Sweel replied that he could have one in a couple days. Plans were then made to meet again at the park on September 4.

On September 3, a breakin occurred at Midwestern Homes in Rapid City, and some of the equipment taken included a Hewlett-Packard computer and several IBM typewriters.

---

1. This moots defendant's claim that the length of his sentence violates his constitutional rights. Further, we find no merit in his argument that State failed to fulfill its burden of establishing that the possession of marijuana with intent to distribute charge in United States District Court was a felony.

On September 4, defendant purchased an IBM Selectric typewriter from Sweel out of Sweel's pickup at the Canyon Lake parking lot.

The next day, September 5, defendant was arrested by officers of the Rapid City Police Department for the offense of driving while under the influence of an alcoholic beverage (DUI). At that time defendant was operating a vehicle owned by and registered to a friend from Sturgis, South Dakota. Following routine procedures of the Rapid City Police Department, Officer Burdick (Burdick) inventoried the contents of the car, including the trunk, prior to having it towed away.

Burdick testified it is standardized departmental procedure that if a vehicle cannot be immediately turned over to someone and cannot be secured, it is inventoried and towed. According to Burdick, this is the routine procedure upon every arrest in which a vehicle must be secured, including all DUI's when the vehicle cannot be secured.

The car that defendant had been operating, in fact, could not be secured by the police because the doors would not lock. During the course of the inventory of the vehicle, Burdick located an IBM Selectric typewriter in the trunk and later discovered that it had been stolen from Midwestern Homes two days earlier. It was therefore seized and stored as evidence at the Rapid City Police Department. Although stolen, defendant was not charged with any offense relating to this typewriter.

On September 24, defendant and Sweel met in a downtown Rapid City parking lot where additional equipment was transferred from Sweel's pickup to the trunk of defendant's rental car. This property was also allegedly stolen from Midwestern Homes. Later, the equipment was transferred from defendant's rental car to his wife's car.

The following day, defendant left for Sioux Falls, South Dakota, in his wife's car (defendant knew that the car had been reported stolen by his wife) with both Sweel and other stolen equipment therein. Later in the day, an officer of the Sioux Falls Police Department saw the car, confirmed that it was reported stolen, and started to follow defendant. A high-speed chase resulted. Eventually, the police found the vehicle parked behind sand piles. Apparently, defendant had driven the car there and removed the equipment from the trunk with the intention of jumping back into the vehicle and later telling Sweel where the machines were located. However, defendant saw headlights, took off running, and was shortly apprehended by the police. The police observed that dust and dirt had been wiped away from the trunk lid area and that some keys remained in the trunk lock. Underneath a blanket located behind the vehicle, they found a typewriter and a Hewlett–Packard computer.

At trial, the typewriter found in the trunk of his friend's car at the time of the DUI arrest in Rapid City was introduced into evidence to show that defendant had knowledge of the stolen character of the other office equipment in his possession.[2] The jury convicted defendant of petty theft in the first degree, by receiving stolen property, (i.e., the IBM typewriter) and grand theft by receiving stolen property (i.e., the Hewlett–Packard Computer). Later, after a court trial on the habitual offender information, defendant was found guilty. In subsequent proceedings, including an appeal to this court, the validity of one of defendant's prior convictions was successfully challenged and stricken from the Part II information. *State v. Flittie, supra.*

Defendant argues that the fact of his possession of the Selectric typewriter, taken from the vehicle in Rapid City, should have been suppressed.[3] We disagree.

---

**2.** From the officers' testimony, the trial court concluded that the search on September 5, in Rapid City, was incident to a lawful arrest and a proper inventory search.

**3.** Although not addressed by State in its brief, an interesting argument could be made that defendant had no standing to challenge the search in Rapid City since the vehicle was not his property and he had no expectation of priva-

**4**

### a. *Probable Cause.*

■ Defendant argues that the Rapid City Police Officers failed to warn him not to drive and thus there was no probable cause for the DUI stop in the first instance. Defendant argues that having no probable cause for the DUI arrest is a basis for suppressing the search. Since this issue is raised for the first time on appeal, we would need not consider it. *State v. King,* 400 N.W.2d 878 (S.D.1987).

On the merits, however, we find that there was probable cause for the stop. Initially, we note that all that is needed to have probable cause for stopping a vehicle is a reasonable suspicion. *Matter of Herrera,* 393 N.W.2d 793 (S.D.1986). Here, the facts reveal that prior to defendant being stopped, Officers Burdick and Fox encountered defendant at a fight. Defendant refused to produce identification. At this time, Fox noticed defendant's eyes were bloodshot and red and that there was a strong odor of alcohol upon his breath. The officers observed defendant leave the area and get into the vehicle and drive away. Therefore, the officers had a reasonable suspicion that defendant was operating a motor vehicle while under the influence of alcohol. *State v. Michalek,* 407 N.W.2d 815 (S.D.1987); *State v. Hall,* 353 N.W.2d 37 (S.D.1984).

### b. *Search of Vehicle.*

■ The second part of defendant's argument is that the search of the vehicle (his friend's) was invalid and thus the evidence of the typewriter found in the trunk should have been suppressed. State argues that the search was valid either under the automobile exception or the search incident to arrest exception.

We do not rule on the validity of the search under either exception because the search was an appropriate inventory search, which coincided with the intent of the officer as so specifically expressed in his testimony.

The first significant case in this state specifically dealing with inventory searches of automobiles is *State v. Opperman,* 89 S.D. 25, 228 N.W.2d 152 (S.D.1975) (Opperman I). In *Opperman I,* this court dealt with a situation wherein a *locked* vehicle was impounded for a parking violation. After being impounded, the vehicle was broken into[4] and searched by the police and less than one ounce of marijuana was discovered in the unlocked console (glove compartment). This court found that the search of the vehicle and the seizure of the marijuana was in violation of the Fourth Amendment to the United States Constitution. (It is interesting to note that at the time of *Opperman I* the law of inventory searches had not yet developed. As Justice Winans, speaking for the majority, observed, "[t]he Supreme Court of the United States has not decided whether an inventory procedure is a search." 89 S.D. at 27, 228 N.W.2d at 153.)

Upon appeal by the State of South Dakota, the United States Supreme Court granted certiorari, and in a split decision held that there had been no Fourth Amendment violation. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Recognizing that our court has the right to provide individuals with greater protection under the state constitution, this court persisted in holding that the search of Opperman's vehicle was invalid under our constitution.[5] *State v. Opperman,* 247 N.W.2d 673 (S.D.1976) (Opperman II). In invalidating the search of the Opperman vehicle, this court, in *Opperman II,* held under South Dakota Constitution, Article VI, § 11 that:

---

cy nor right to complain of its search. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979). However, since that issue is not before us, we will leave it for another time.

4. The police instructed the wrecker driver to break into the vehicle so as to allow them to search its contents.

5. Both the United States and the South Dakota search and seizure provisions are nearly identical and prohibit "unreasonable" searches and seizures.

... 'minimal interference' with a citizen's constitutional rights means that noninvestigative police inventory searches of automobiles without a warrant must be restricted to safeguarding those articles which are within plain view of the officer's vision.

Commencing with its decision in *South Dakota v. Opperman, supra,* the United States Supreme Court has steadfastly held that police inventory searches, conducted in good faith, are valid. As recently as 1987, that Court, citing its prior decision in *Opperman, supra,* upheld the search of a backpack found in a van at an impoundment lot after a DUI arrest. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The Supreme Court noted that there was neither a showing that the officers had acted in bad faith, that they had departed from standardized procedures, nor that they were searching for the sole purposes of investigation. The Court observed that governmental interests justified the search, e.g., police are potentially responsible for the property and by securing the property they were protecting it from unauthorized interference. The Court therefore upheld the search, citing, among others, its decisions in *Opperman, supra,* and *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

The issue for us to decide is whether an inventory search of a locked trunk is improper.[6] In *Colorado v. Bertine, supra,* Chief Justice Rehnquist quoted from that Court's prior decision in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982):

'When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, *trunks,* and wrapped packages, in the case of a vehicle, must give way to

the interest in the prompt and efficient completion of the task at hand.' (Emphasis added.)

Chief Justice Rehnquist went on to state:

We reaffirm these principles here: ' "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." ' Citing *inter alia Lafayette, supra.*

*Bertine,* 479 U.S. at ——, 107 S.Ct. at 743, 93 L.Ed.2d at 747–48.

Further, following the rationale of the 10th Circuit in *United States v. Martin,* 566 F.2d 1143 (10th Cir.1977), it is not particularly significant whether one considers a locked car or a locked car trunk. In both instances, it is necessary to use a key in order to gain access to the area searched. Among the many cases approving trunk inventory searches, *see generally United States v. Duncan,* 763 F.2d 220 (6th Cir.1985); *United States v. Long,* 705 F.2d 1259 (10th Cir.1983); *United States v. Edwards,* 577 F.2d 883 (5th Cir.1978) (en banc) (*cert. denied* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *People v. Meeks,* 194 Col. 214, 570 P.2d 835 (1977); *Deneal v. State,* 468 N.E.2d 1029 (Ind. 1984); *State v. Ailport,* 413 N.W.2d 140 (Minn.App.1987); *State v. Soutor,* 316 N.W.2d 576 (Minn.1982); *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980); *State v. Roberge,* 642 S.W.2d 716 (Tenn.1982); *State v. Prober,* 98 Wis.2d 345, 297 N.W.2d 1 (1980).

Upon a reexamination and further consideration of the United States Supreme Court's holding in *South Dakota v. Opperman, supra,* and a thorough review of its progeny, we have concluded to *preserve* our holding in *Opperman II,* with the following modification. We now hold that so long as there is a good faith, noninvestigatory inventory search conducted pursuant

---

6. State has argued that it was appropriate to search the trunk because the officers found marijuana in the passenger compartment during the initial stages of the inventory search. While that argument would have merit under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Peterson,* 407 N.W.2d 221 (S.D.1987); and *State v. Rice,* 327 N.W.2d 128 (S.D.1982), it is not applicable here. Officer Burdick specifically testified that the sole purpose of opening the trunk was to conduct the standard inventory search.

to reasonable, standardized and uniform policies, it need not be restricted to articles which are within the plain view of the officers' vision. We agree with the United States Supreme Court that an inventory search "is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration" which requires a " 'balanc[ing] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " [7] *Lafayette,* 462 U.S. at 645, 103 S.Ct. at 2608, 77 L.Ed.2d at 70 *citing Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979).

Thus, we conclude that no error was committed by the trial court in failing to suppress the evidence found in the trunk as such evidence was obtained pursuant to a good faith, noninvestigatory, standard inventory search.

Remanded for re-sentencing.

WUEST, C.J., and MORGAN and SABERS, JJ., concur specially.

HENDERSON, J., concurs in part and concurs in result in part.

WUEST, Chief Justice (specially concurring).

Despite the disclaimer in the majority opinion and Justice Sabers' special concurrence, we are reversing *Opperman II.* I join their "modification."

SABERS, Justice (concurring specially).

I concur, especially in the preservation of *State v. Opperman,* 247 N.W.2d 673 (S.D. 1976) (*Opperman II*), as modified. Although the differences in these two cases do not appear to be great, they are sufficient to produce different results. In this case, the vehicle was involved in a DWI in Rapid City. The defendant was not the registered owner of the vehicle. The doors of the vehicle would not lock. The reg-

istered owner of the vehicle had a Sturgis address and it was not practical to locate him. Therefore, unlike *Opperman II,* it was reasonable to tow, impound, open, and inventory the contents of the vehicle, including those contained in the locked trunk. This inventory procedure was reasonable and did not violate the provisions of the state or federal constitutions against unreasonable searches and seizures.

I am authorized to state that Justice MORGAN joins in this special concurrence.

HENDERSON, Justice (concurring in part, concurring in result in part).

I join the majority opinion in a reversal of the sentencing for the reason that the sentencing was a habitual offender sentencing and was incorrectly imposed because conspiracy to commit murder and accessory after the fact to murder was the "same transaction" under SDCL 22–7–9.

I concur in result on Issue II in that this author believes in the holding of *Opperman II.* This author has attended, like thousands of other trial judges, the courses at the National Judicial College where this Supreme Court's decision in *Opperman* has been taught and held up as a vanguard for state constitutional rights and, more specifically, the right of a state to grant its citizens more protection under its own state constitution than those rights afforded under the Fourth Amendment under the United States Constitution. Later, as an appellate judge attending appellate seminars in the nation, I have been likewise impressed with the frequent reference to the *Opperman II* holding by noted appellate scholars. It is noteworthy that *Opperman II* held that an "inventory search" fell under a scrutiny of the "unreasonable search and seizure" provision of our state constitution, as an "inventory search" was a "search." We further held in *Opperman II* that it was necessary that there be a determination of reasonableness which re-

---

**7.** Like the United States Supreme Court, we recognize three distinct needs for securing and inventorying automobiles' contents:

[T]he protection of the owner's property while it remains in police custody ... the protection

[of] the police against claims or disputes over lost or stolen property ... and the protection of the police from potential danger[.]
*Opperman,* 428 U.S. at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005 (citations omitted).

quired a balancing of the need for a search in a particular case vis-à-vis the scope of the particular intrusion. For well over a decade, we have preserved this holding in this state and have often times cited our *Opperman* decision noting that there must be a "minimal interference" with an individual's protected rights. I do not wish to depart from our *Opperman* holding.

Routine procedures of the Rapid City Police Department in taking inventory of the contents of this car, including the trunk, are totally immaterial. The procedures could be, in any given police scenario, foolhardy or unlawful, *i.e.*, simply because some police department in any hamlet or city decides to establish a certain policy or procedure—such a procedure does not eradicate the Bill of Rights.

Officer Burdick, arresting officer on the DUI, conducted a search of the inside of the vehicle which Flittie drove in Rapid City when arrested for DUI. Burdick found four bags of what he believed to be marijuana under the driver's side of the front seat. Such a discovery, without question, triggered a "probable cause" to look in the trunk of the car to discover more marijuana. Furthermore, the vehicle did not belong to Flittie. Additionally, this was a search contemporaneous with an arrest and was confined to the vicinity of the arrest and could be reasonably interpreted to obtain evidence so that it would not either be concealed or destroyed once the impoundment of the vehicle no longer existed.

Discovering four bags of marijuana under the driver's side of the front seat, Officer Burdick had probable cause for searching this automobile under the "automobile exception." Officer Burdick, having discovered marijuana within the inside chassis of the vehicle, had probable cause to believe that the trunk contained contraband or evidence of a crime. Therefore, under past precedent of this Court, namely, *State v. Rice*, 327 N.W.2d 128 (S.D.1982), and *State v. Boardman*, 264 N.W.2d 503 (S.D. 1978), this evidence should not have been suppressed. It was properly receivable in trial under both the "search incident to arrest exception" and the "automobile exception."

My research reveals twenty-five separate jurisdictions which have cited *Opperman II* with approval. We need not depart from our *Opperman II* holding which has been cited throughout the nation, taught at national appellate seminars, and is deeply imbedded in the written law of this state. The majority's phrase, "reasonable, standardized and uniform policies," has a lofty ring, but in Podunk, USA, that might very well be—bad.