**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Gary L. HEJHAL, Defendant and Appellee.**

**No. 16251.**

Supreme Court of South Dakota.

Argued Feb. 16, 1989.

Decided April 19, 1989.

John Slattery, Elk Point, for plaintiff and appellant.

James McCulloch, Vermillion, for defendant and appellee.

MILLER, Justice.

In this appeal, we hold that a police inventory search of the contents of a wallet during a routine jail booking procedure did not violate Article VI, § 11 of the South Dakota Constitution.

## FACTS

Gary Hejhal (Hejhal) was arrested for driving while under the influence of alcohol. He was taken to the local sheriff's office for booking prior to being placed in jail. As part of his routine booking procedure, the arresting officer made an inventory of Hejhal's personal belongings, including an inventory of the individual items contained in his wallet.

While performing the inventory, the arresting officer discovered a small plastic bag containing a white powdery substance. Chemical analysis of the substance revealed that it was methamphetamine. Hejhal was later charged with possession of a controlled substance. At a pretrial motions hearing, Hejhal moved to suppress this evidence arguing that the inventory of his wallet constituted an unreasonable search under Article VI, § 11 of the South Dakota Constitution. The trial court, relying upon this court's decision in *State v. Opperman*, 247 N.W.2d 673 (S.D.1976) (*Opperman II*),[1] granted Hejhal's motion to suppress the evidence holding that its discovery was the result of an unconstitutional inventory search. This court granted State's petition for intermediate appeal. We reverse and remand.

## ISSUE

WHETHER A POLICE INVENTORY SEARCH OF THE CONTENTS OF A DEFENDANT'S WALLET DURING A JAIL BOOKING PROCEDURE VIOLATES ARTICLE VI, § 11 OF THE SOUTH DAKOTA CONSTITUTION.

## DECISION

State argues that the officer's warrantless search of Hejhal's wallet was not un-

reasonable and therefore not unconstitutional. We agree. This court recently stated in *State v. Flittie*, 425 N.W.2d 1, 5–6 (S.D.1988), that:

> a good faith, noninvestigatory inventory search conducted pursuant to reasonable, standardized and uniform policies ... need not be restricted to articles which are within the plain view of the officer's vision.

This holding modified our earlier decision in *Opperman II, supra*, which stated that warrantless noninvestigative police inventory searches (of automobiles) must be restricted to safeguarding those articles which are within plain view of the officer's vision. Applying *Flittie* to the facts in this case, we believe that the trial court erred in suppressing the methamphetamine.

As noted by the United States Supreme Court in *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), "[a] so-called inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration. To determine whether the search [is] unreasonable we must 'balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" 462 U.S. at 644, 103 S.Ct. at 2608, 77 L.Ed.2d at 70 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979)). Under *Lafayette*, searching an arrestee incident to his booking into jail is consistent with the following legitimate objectives: (1) protecting the arrestee's property while he is in jail; (2) protecting the police from groundless claims that they have not adequately safeguarded the defendant's property; (3) safeguarding the detention facility by preventing the introduction of weapons or contraband; and (4) ascertaining or verifying the identity of the person arrested. *Lafayette's* analysis was also reaffirmed by the United States Supreme Court in *Colorado v. Bertine*, 479 U.S. 367, 107

---

1. We note that the trial court's decision was made prior to this court's holding in *State v. Flittie, infra*, and that the trial court even suggested that this case might provide this court the appropriate facts for the reconsideration of our holding in *Opperman II*.

S.Ct. 738, 93 L.Ed.2d 739 (1987), *cited with approval* in *Flittie, supra.*

Based upon our holding in *Flittie* and the decisions of the United States Supreme Court in *Bertine, Lafayette,* and *Prouse,* we hold that State had a legitimate interest in conducting an inventory of the contents of Hejhal's wallet, namely, to protect the property contained therein against theft, to protect the police against false claims of theft, and to prevent the introduction of contraband into the detention facility. We believe that this intrusion by State was conducted pursuant to reasonable standardized and uniform policies. *See Lafayette, supra.* As a result, we reverse the trial court's order suppressing the introduction of the methamphetamine and remand for further proceedings consistent with this opinion.[2]

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. This is another assault on the Bill of Rights.

Reference is made to my concurrence in part, concurrence in result in part in *State v. Flittie,* 425 N.W.2d 1, 6–7 (S.D.1988). *State v. Opperman,* 247 N.W.2d 673 (S.D. 1976) (*Opperman II*), was eroded by *Flittie.* Here, we again see *Opperman II* being whittled away.

Contents of the wallet are not within plain view. This State Supreme Court has

the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution. *Opperman II* at 674–75. If we base decisions on "standardized and uniform policies" of any given police department, we are deciding cases, not upon our state constitution, but upon the whim and caprice of each hamlet, town and city in this state. A "standardized policy" in Podunk might be flagrantly unconstitutional. Law enforcement myopia often seizes a police department and it takes the Bill of Rights to correct its vision.

It is our duty to prevent law enforcement agencies from overstepping their bounds. Fundamentally, the judicial system exists to protect political, economic and social rights which inure to the dignity and freedom of the individual as secured by constitutional government.

This is an "inventory" case. This officer searched through all the compartments of the wallet. Compartments within the wallet were opaque, and the officer could not see them. Now, for the final blow: An inventory (is that not what the State contends it had to perform?) was never filed on the contents of the wallet.

---

**2.** Hejhal argues that it would have been more reasonable and the scope of State's intrusion would have been minimized if the wallet and its contents would have been inventoried as one item or, alternatively, if the wallet had been sealed with tape with Hejhal's signature placed on the tape in such a manner that the removal of the tape would obliterate the signature.

While we agree that this practice might be less intrusive, we will not place ourselves in the position of second-guessing law enforcement agencies as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the stationhouse. *Lafayette, supra.*