603 So.2d 1382 (1992)
STATE of Florida, Appellant,
v.
Howard Emitt THOMAS, Appellee.
No. 91-2252.
District Court of Appeal of Florida, Fifth District.
August 28, 1992.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David G. Mersch, Asst. Atty. Gen., Daytona Beach, for appellant.
Kenneth J. Cotter of Cotter, Valerino, Zelman & Farr, P.A., Winter Park, for appellee.
DAUKSCH, Judge.
This is an appeal from an order granting appellee's motion to suppress cocaine. We find that the trial court erred in granting the motion and reverse.
Appellee was charged with possession of cocaine. He filed a motion to suppress, arguing that his stop and detention was illegal and unsupported by any facts indicating a suspicion of criminal activity. He also argued that the seizure of his person and of any evidence gathered thereafter was the direct result of an illegal stop and detention and was done without a warrant, without probable cause, and without the knowing and valid consent of the appellee.
Undercover officers purchased cocaine at a house on Terry Street in Orlando and a search warrant was obtained to search the house for narcotics. As the officers approached the house to secure it so the warrant could be executed, they observed appellee and another male get out of a car parked in front of the house and head directly toward the house. The two males were about to go through the gate to the house when they saw the officers. The other male ran into the house and slammed the door behind him while appellee immediately did a 180-degree turn and headed back to the car and away from the house. Officer Michael Favorit testified he told appellee to get on the ground, but appellee did not obey his order, but rather ran around the car and got down on the other side of the car. Favorit followed appellee around to the other side of the car, and as Favorit and Sergeant Gary James Carter approached appellee from opposite ends of the car, Favorit and Carter both observed appellee holding a clear sandwich-size plastic baggie containing a white substance, which from their training and experience they believed to be crack cocaine. Favorit *1383 also said that, based on his knowledge and experience, guns and narcotics "usually go together." A search of the car revealed a gun.
After the hearing, the trial court granted appellee's motion to suppress, but made no findings nor stated any reasons for its ruling. We agree with the state's argument on appeal that the trial court's implicit legal ruling that appellee was unreasonably detained is erroneous. We further agree with the state's assertion that, considering the totality of the circumstances, appellee's detention was justified for the safety of the officers, the appellee and any other persons in the immediate area, and to maintain the status quo for the execution of the search warrant.
The officers had a reasonable basis to order appellee to get on the ground for his own safety. A police officer may order a person or persons to "get down," "stay where you are," or even to "get out of the building," where the circumstances known to the officer cause the officer reasonably to believe that the person's safety may be in immediate danger, e.g., a sniper on a roof, a bank robbery in progress, or a bomb threat. Here, the officers were in the process of securing the premises appellee was about to enter for the purpose of executing a narcotics search warrant. Even appellee in his answer brief refers to the house and surrounding area during the execution of the search warrant as an "area of possible gunfire." Officer Favorit testified guns and narcotics "usually go together." In State v. Price, 564 So.2d 1239, 1241 (Fla. 5th DCA 1990), this court noted the "propensity for violence inherent in narcotics trafficking." Similarly, in State v. Amaro, 436 So.2d 1056, 1061 (Fla. 2d DCA 1983), the court stated "[r]ecent history has shown that the potential for violence in a drug related felony ... is high and cannot be discounted." Clearly, the officers could order appellee to get on the ground for his own safety.
Just as the inherent nature of the circumstances posed a threat to appellee, the circumstances also posed a threat to the safety of the officers executing the warrant. Appellee's furtive response to seeing the officers approach would have caused any reasonably cautious person to fear the fact that appellee was returning to the car he had just exited, possibly for the purpose of obtaining a gun from the car. In Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the United States Supreme Court noted that although no special danger to the police was suggested in the record before it
... the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers exercise unquestioned command of the situation. Cf. 2 W. La Fave, Search and Seizure § 4.9, pp. 150-151 (1978).
452 U.S. at 702-703, 101 S.Ct. at 2594. Given the state's interest in the safety of its police officers, the inherent potential for danger in executing narcotics search warrants, and the appellee's furtive response of heading for his car upon seeing the officers, the totality of the circumstances gave Officer Favorit a proper basis upon which to order the appellee to get on the ground.
Finally, we believe appellee was properly detained during the execution of the warrant until such time as the officers could ascertain the appellee's identity and complicity, if any. In Michigan v. Summers, supra, the United States Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705, 101 S.Ct. at 2595. The court stated that
... [i]n assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing *1384 flight in the event that incriminating evidence is found ...
452 U.S. at 702, 101 S.Ct. at 2594. Officer Favorit testified that he did not know who the appellee was, and that the appellee could have been the one who sold the cocaine to the undercover officer. Given that the appellee was in the process of entering the premises, it was reasonable for the officer to detain the appellee until he could ascertain who the appellee was, and to prevent the possible flight of the seller of the cocaine. It is logically and legally irrelevant whether a person so detained is detained while on the premises, while exiting the premises, or while in the process of entering the premises as the officers are executing the warrant. It would defy the court's logic in Michigan v. Summers to say that an individual who may be properly detained during the execution of a search warrant could escape detention either if, seeing the officers approach, the person manages to make it off the premises before the officers could stop him, or, if, as the person is in the process of entering the premises, he sees the officers approach and turns around and walks away from the premises.
Appellee asserts that Michigan v. Summers is distinguishable, because there is "nothing in the record to indicate that the appellee was, in fact, about to enter the premises." We disagree. The evidence before the court showed that the appellee was about to enter the premises. Favorit testified that as the officers driving to the scene were approximately a half a block away from the residence, he saw appellee and another male get out of a car parked directly in front of the house that was the subject of the warrant and walk not on the sidewalk but rather directly toward a gate to the house. Favorit further testified that as the appellee was going through a gate to the house appellee saw the officers and immediately did a 180-degree turn and headed back to his car. The other male ran into the house, slamming the door behind him.
The order granting appellee's motion to suppress must be reversed. The totality of the circumstances gave the officers a reasonable basis for detaining the appellee for his own and their own safety. Appellee also was properly detained to maintain the status quo during the execution of the search warrant, and until such time as the officers could ascertain his identity and his criminal involvement, if any.
ORDER QUASHED, REMANDED.
PETERSON and GRIFFIN, JJ., concur.