624 A.2d 1296

**Howard Edward Gregory FROMM**

v.

**STATE of Maryland.**

**No. 1224, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

May 27, 1993.

George McDowell, Baltimore, for appellant.

Mary O'Malley Lunden, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before WILNER, C.J., and MOYLAN and WENNER, JJ.

ON MOTION FOR RECONSIDERATION

WILNER, Chief Judge.

The principal issue in this appeal is whether the trial court erred by denying appellant's motion to suppress inculpatory statements. Appellant argues that he was illegally detained by police officers when they arrived at his apartment building to execute a search warrant and that his subsequently obtained statements were therefore tainted. The illegality of the detention, he asserts, arises from the fact that he was not in his apartment when the officers seized him, but was walking out of the building next door, headed toward a parking lot.

On March 22, 1992, we filed a *per curiam,* unreported Opinion affirming the judgment of the trial court. We assumed *arguendo* that appellant was correct in his assertion that, under the circumstances, the warrant to search his home did not carry with it the authority to detain him while the search was being conducted and that the State was incorrect in its assertion that the detention was authorized under the rule of *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). We determined, however, that the detention was lawful and that the statements obtained as a result of it were not suppressible because the police had probable cause to arrest appellant.

On April 5, 1992, appellant filed the motion for reconsideration that is now before us. He contends, in essence, that (1) the record is devoid of evidence indicating that, at the time of his initial seizure, there was probable cause for his arrest and that, in any event, (2) this Court's determination was improper because the State did not argue below that there was probable cause for appellant's arrest at the time he was initially detained and the trial court did not make any findings in that regard. Appellant is indeed correct in his observation that the issue of probable cause for his arrest at the time of his initial seizure was not raised or decided below, and we therefore grant his motion for reconsideration. We do note, however, that had the State argued below that there was probable cause for appellant's arrest at the time he was seized, we

would have found sufficient support for the argument in the record. We now determine whether appellant's initial argument to this Court—that the warrant to search his home did not carry with it the authority to detain him while the search was being conducted—has merit.

As we observed in our March 22 Opinion:

"The record of the suppression hearing establishes that in early January of 1992, appellant was the subject of a police investigation into illegal drug activities. The investigation culminated in the execution of a search and seizure warrant upon appellant's apartment. As the police officers were approaching appellant's apartment building to execute the warrant, they saw appellant walk out of the apartment building next door and head toward the parking lot. Some of the officers continued on toward appellant's apartment, while two others[, who recognized appellant from a picture they had been shown, turned back and stopped him]. The two officers [took appellant to his apartment and detained him outside the door] while the other officers forced open the door. Appellant was then taken inside the apartment and a search of the apartment was conducted. At some point during the process, appellant was placed in handcuffs."

The officers recovered both cocaine and paraphernalia from the apartment. Appellant asserts that he was questioned and made his first statement "immediately upon the conclusion of the execution of the warrant. He was questioned again some four hours later at the police station after his booking procedures."

The Supreme Court held in *Michigan v. Summers*, 452 U.S. at 705, 101 S.Ct. at 2595–96, that "for Fourth Amendment purposes, ... a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (Footnote omitted.) In that case, police officers arriving at the defendant's home to execute a search warrant found him outside, descending the front steps. The officers requested that the defendant reenter the house and

then detained him while they conducted the search. They arrested the defendant upon finding narcotics in the basement. The Court explained that, in light of the defendant's connection to the home, the existence of the search warrant provided an articulable and individualized suspicion which justified his detention. *Id.* at 703–04, 101 S.Ct. at 2594–95. The Court further noted that a detention pursuant to the execution of a search warrant promotes important law enforcement interests, such as preventing flight, protecting the safety of the officers, and, by requiring that the defendant be present, facilitating the orderly completion of the search. *Id.* at 702–03, 101 S.Ct. at 2594.

Appellant observes that the rule of *Michigan v. Summers* applies only to "occupants" of the premises to be searched. In his view, only "persons who are on the premises to be searched at the time those premises are to be searched" can properly be considered occupants.[1] Appellant suggests that because he was walking toward his car from a neighboring apartment building when police arrived to execute the search warrant, "he was not an 'occupant' of the targeted apartment[ ] under the definition of 'occupant' implicitly used by the Supreme Court in *Summers*." [2] Appellant does not suggest in

---

1. Other courts that have attempted to determine who fits the definition of "occupants" under *Summers* have concerned themselves only with whether non-residents are occupants. *See generally* 2 Wayne R. La-Fave, *Search and Seizure* § 4.9(e) at 309–10 (1987). They have not discussed whether residents are not occupants if they are not home when police arrive. There is no dispute that appellant resided in the apartment in question.

2. In support of his argument, appellant cites four cases, none of which is apposite. In *United States v. Taylor,* 716 F.2d 701 (9th Cir.1983), police conducting a drug investigation had a warrant to search a house and vehicle. They stopped the vehicle as it was leaving the house and detained the driver and a passenger. The passenger, who was handcuffed and placed face down in a ditch while the searches were conducted, moved to suppress evidence seized from him on the ground that the detention was unlawful. Although the United States Court of Appeals for the Ninth Circuit determined the detention was justified on other grounds, it found that the lower court erred by ruling that it was justified under *Michigan v. Summers*. The court explained that the detention did not advance any "governmental purpose articulated in

this appeal that his detention was in any way more intrusive than the type of detention contemplated by *Michigan v. Summers.* We therefore restrict our inquiry to whether the detention of appellant was proper even though he was not on the premises to be searched when police arrived. *See generally Langworthy v. State,* 284 Md. 588, 596, 399 A.2d 578 (1979), *cert. denied,* 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981).

When faced with factually similar situations, courts in other jurisdictions have consistently upheld detentions of persons found outside of dwellings to be searched. In *U.S. v. Cochran,* 939 F.2d 337 (6th Cir.1991), *cert. denied,* — U.S. ——, 112

---

*Summers,"* and noted specifically that the suspect "was obviously in no position to facilitate the orderly completion of the search. . . ." *Taylor,* 716 F.2d at 707.

In *United States v. Tate,* 694 F.2d 1217 (9th Cir.1982), *vacated on other grounds,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984), a police officer set up a surveillance operation outside a house that was the subject of a search warrant application. Several men left the house in a car, and the officer followed the car for about five miles. Upon learning that a magistrate had signed the warrant, the officer stopped the car, noticed evidence of a crime, and arrested the men. In ruling that the stop was improper, the appellate court explained that "[t]his was not a warrant of arrest, and a search warrant does not authorize the arrest of any persons associated with the premises to be searched, when neither on *nor near* the premises, for the purpose of conveying them to the scene of the search." *Id.* at 1223 (emphasis added).

Two of the four cases upon which appellant relies were decided prior to *Michigan v. Summers.* Both involved searches of the defendants' persons rather than mere detentions. In *State v. Cottrell,* 12 Wash.App. 640, 532 P.2d 644, *rev'd on other grounds,* 86 Wash.2d 130, 542 P.2d 771 (1975), police officers executing a warrant to search a house stopped the defendant as he drove up outside, directed him into the house at gunpoint, then searched his person. The Court of Appeals of Washington held that the search warrant for the house did not authorize the search of the defendant. *Id.* at 647. In *People v. Kerrigan,* 49 A.D.2d 857, 374 N.Y.S.2d 22 (1975) *(per curiam),* police had a warrant to search a florist shop and the defendant, if found therein, for evidence of gambling. The defendant was not found therein—instead, he was stopped and searched the next day when police spotted him a quarter mile from the shop. The appellate court ruled that the stop and search was improper, explaining that the search warrant "could not have provided a proper basis for search of defendant's person when he was encountered at a place distant from the focal point of the warrant." *Id.* at 24.

S.Ct. 1166, 117 L.Ed.2d 413 (1992), police with a warrant to search the defendant's residence watched the residence until they saw the defendant leave it and drive off in his car. The officers followed the car a short distance and stopped it with the intention of asking the defendant to accompany them back to his home to assist them in entering it. At a hearing on a motion to suppress evidence seized from the residence, the State established that the officers did not wish to force entry into the dwelling while the defendant was inside it because they believed he carried a firearm. The defendant pointed out that the *Summers* defendant was on the front steps of his home when he was detained, and argued that his case was distinguishable from *Summers* in that he had driven a short distance away when he was stopped by police. In affirming the denial of the motion to suppress, the United States Court of Appeals for the Sixth Circuit explained:

> "We do not find this distinction significant.... *Summers* does not impose upon police a duty based on geographic proximity (i.e., defendant must be detained while still on his premises); rather, the focus is upon police performance, that is, whether the police detained defendant as soon as practicable after departing from his residence. Of course, this performance-based duty will normally, but not necessarily, result in detention of an individual in close proximity to his residence."

939 F.2d at 339 (footnote omitted).

Similarly, in *Com. v. Reicherter*, 317 Pa.Super. 256, 463 A.2d 1183 (1983), the Superior Court of Pennsylvania held that police with a warrant to search the defendant's apartment properly stopped the defendant just after he left the building, as he was riding in a friend's truck several blocks away. The Court observed:

> "Although Reicherter was initially stopped by the police while several blocks from his apartment while the defendant in *Michigan v. Summers* ... was stopped on the front steps of his residence, this is not a difference such as would require a different result: in both cases some transportation

of relatively short duration was required to return the defendant to the residence to be searched."

*Id.* at 1185. *See generally State v. Thomas,* 603 So.2d 1382, 1383 (Fla.Dist.Ct.App.1992) (where the defendant arrived at the location to be searched as police were preparing to execute a search warrant, then attempted to return to his car upon seeing police, the officers properly detained the defendant "until such time as [they] could ascertain [his] identity and complicity, if any"); *State v. Ailport,* 413 N.W.2d 140 (Minn. Ct.App.), *cert. denied,* (Minn. Nov. 18, 1987) (where the defendant, who had rented a motel room, drove up and parked outside the room as police were preparing to search it pursuant to a valid warrant, the police properly detained the defendant until the search was completed). *Cf. United States v. Henderson,* 645 F.2d 627 (8th Cir.), *cert. denied,* 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981) (where, prior to the *Summers* decision, police with a warrant to search the defendant's house waited outside until they saw the defendant leave in his car, then stopped him with the intention of requesting that he accompany them back to the house, the stop was proper. The officers indicated that they chose that course of action in order to avoid violence or the destruction of evidence, and that they stopped the defendant as soon as they felt they could do so with relative safety).

There is no dispute, in the instant case, that appellant was the subject of a police investigation into illegal drug transactions, that he resided in the apartment that was specified in the search warrant, and that the police officers knew that he resided there and had been shown his picture. Although appellant was not inside his apartment when the officers arrived to execute the search warrant, he, like the defendants in the cited cases, was only a short distance away. The evidence presented at the hearing on the motion to suppress established that he was heading out of a neighboring apartment building and toward the parking lot. In detaining appellant and transporting him the short distance to his apartment, the police officers promoted at least two legitimate law enforcement interests set forth in *Michigan v. Sum-*

*mers*—preventing appellant's flight and facilitating the orderly completion of the search. As the trial court explained, it

"is permissible to detain persons *in and about* the premises that are specifically identified as having connection with the premises. And this defendant was specifically identified as being the owner or the lessee of the premises. So that I think it was proper to bring him from outside inside during the conduct of the search.

Obviously, when the search was complete, there was an amount of crack cocaine that was found. So that the arrest was proper. And that means that the statements that were made were proper."

(Emphasis added.) Under the circumstances, the rule of *Michigan v. Summers* was indeed applicable and the trial court properly denied the motion to suppress.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.