*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1343**

State of Minnesota,
Respondent,

vs.

Gerald Steven Phillips,
Appellant.

**Filed September 6, 2016
Affirmed
Ross, Judge**

Kandiyohi County District Court
File No. 34-CR-14-918

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Shane Baker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**ROSS**, Judge

Police investigating a man for drug dealing arrested the man and obtained a warrant to search the Willmar apartment of Gerald Phillips, where the man was staying and

reportedly dealing drugs. Police searched and found drug paraphernalia. They later located Phillips and arrested him, finding in his pockets methamphetamine and a spoon with a short tube containing methamphetamine residue. After the state charged Phillips with possession of a controlled substance and possession of drug paraphernalia, Phillips moved the district court to suppress the evidence found on his person, challenging the basis for the search warrant that led eventually to his arrest. The district court denied the motion, and a jury found Phillips guilty. We affirm because we hold that the circumstances afforded the district court probable cause to issue the warrant.

## FACTS

On an October morning in 2014, two agents from a multicounty law enforcement task force investigating drug activity in the Willmar area were watching an apartment. They had gotten a tip from a cooperating individual who told them that R.G. had sold her half an ounce of methamphetamine from the apartment five days earlier. She had told Agent Robert Braness that the apartment belonged to Gerald Phillips. This report was consistent with a separate report from a confidential reliable informant that R.G. was living in that apartment building. The cooperating individual also told the agent that R.G. drove a silver rental car that lacked license plates. Agent Braness and his partner saw a car matching that description parked in a lot beside the apartment building.

While the agents watched the building, they saw a car pull up and drop off J.M., a man Agent Braness knew to be associated with R.G. in drug dealing. Phillips and J.M. met in the parking lot. They entered the building together. Before long, R.G. and J.M. left the

building. R.G. was carrying a duffel bag. The two men got into the silver car and drove away.

The agents followed the car. They knew that R.G. was subject to arrest based on a warrant for an outstanding drug charge. They signaled a traffic stop, but the silver car sped away. A high-speed chase ensued, which ended when R.G. crashed the car. R.G. attempted to flee on foot, to no avail. The agents caught and arrested him. They found a Crown Royal bag containing 26 grams of methamphetamine that R.G. had tossed aside while he fled. They also found several thousand dollars in cash on J.M.'s lap and on the car floor. And they found a plastic bag containing methamphetamine and smaller plastic baggies just outside the wrecked car's passenger side.

Agent Braness suspected that he would find more evidence of drug use or dealing inside the apartment, so he applied for and received a search warrant. Police executed the warrant that afternoon.

Police knocked on the apartment door and announced their presence, but they got no response. They forced their way inside. On the apartment's living room coffee table they found a square piece of glass and a razorblade, both dusty with methamphetamine residue. In the bedroom they found a syringe, a pipe with methamphetamine residue, and plastic baggies, one of which tested positive for methamphetamine. They also found several documents confirming that Phillips lived in the apartment.

Based on the circumstances and the physical evidence, Agent Braness decided to arrest Phillips for drug possession. Two task-force agents drove to an address where they believed Phillips could be found and saw his pickup truck parked outside. They stopped

3

about a block away and waited. Phillips eventually came out and got in his truck and began driving away. The agents stopped Phillips and arrested him. They searched his pockets and found two plastic baggies. One of them contained methamphetamine. The other contained syringes along with a spoon and a short tube that were powdered with methamphetamine residue.

The state charged Phillips with one count of possessing a controlled substance in violation of Minnesota Statutes section 152.025, subdivision 2(b)(1) (2014), and one count of possession of drug paraphernalia in violation of Minnesota Statutes section 152.092 (2014). The state's case rested on the evidence police found on Phillips during his arrest. Phillips moved to suppress this evidence, arguing that the search warrant that led to the arrest was not supported by probable cause and that police otherwise lacked reasonable suspicion to stop his pickup. The district court conducted a hearing and denied the motion. A jury found Phillips guilty. He appeals.

### D E C I S I O N

Phillips builds his attenuated argument on the fruit-of-the-poisonous-tree doctrine. It goes like this: the district court should not have admitted the incriminating evidence that police found on his person during his arrest because they arrested him based on the evidence in his apartment that police found in a search that was unconstitutional because it was premised on a warrant that was issued without probable cause. The argument is not convincing.

A search is lawful if it is executed on a valid warrant issued by a neutral and detached judge. *See State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). The United

4

States and Minnesota Constitutions authorize courts to issue warrants only on a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found." *Yarbrough*, 841 N.W.2d at 622 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). We review search warrant decisions to determine whether, based on the totality of the circumstances, the issuing judge had a substantial basis to conclude that probable cause existed. *See id.* at 623. We afford significant deference to the issuing judge's determination of probable cause, and we consider the warrant application using common sense rather than applying a hypertechnical construction. *State v. Ruoho*, 685 N.W.2d 451, 456 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004).

The state maintains that we should not reach the merits of Phillips's argument but should instead treat it as forfeited by his failure to make the argument in the district court. We generally will not decide issues that were not raised in the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). The state maintains that Phillips's argument in the district court focused on the credibility of the informants and that he did not present the argument he makes on appeal, which is that the warrant application contained insufficient information to establish a connection between R.G.'s criminal activity and his apartment. The state is correct that the informants' credibility was the primary focus of Phillips's prior argument, but the record informs us that Phillips also presented the argument he now makes on appeal. During the omnibus hearing, Phillips cited caselaw stating that probable cause exists only when there is reason to believe that evidence will be found in the place to be searched. His attorney questioned whether Agent Braness had any information connecting

5

Phillips to possession of a controlled substance when he applied for the warrant. And the agent testified that the connection was based on the circumstances and evidence surrounding R.G.'s arrest, which linked Phillips's apartment to drug activity. In its concluding argument, the state maintained that there was a sufficient connection between those circumstances and the apartment. The district court agreed with the state and found that the warrant application established "more than a fair probability that contraband and/or evidence of criminal activity involving narcotics would be located within [Phillips's] [r]esidence." The record does not support the state's forfeiture argument because the argument was expressly presented to and decided by the district court. We turn to the merits.

Phillips argues that the search warrant was not supported by probable cause because the warrant application gave little information about his own drug activity. It is true that neither informant told police that Phillips and R.G. were selling drugs together, that Phillips was paid from the drug sales, or that Phillips was seen possessing drugs. But the question is not whether the application connected the likely drug evidence to Phillips; the question is whether it was sufficient to connect the likely drug evidence to *the apartment*. *See State v. Souto*, 578 N.W.2d 744, 747–48 (Minn. 1998) ("This court has historically required a direct connection, or nexus, between the alleged crime and the particular place to be searched, particularly in cases involving the search of a residence for evidence of drug activity."). The application did just that, indicating that R.G. was staying in the apartment building, had reportedly sold drugs from Phillips's apartment, and was arrested possessing drugs and a large amount of cash soon after he left the apartment.

6

Phillips maintains that police had no information after R.G.'s arrest that tended to establish that *more* drugs were in the apartment. He suggests that the issuing judge should have concluded that R.G. had taken all of the methamphetamine with him. We are not persuaded. Again, courts view the information in the warrant application in a commonsense rather than hypertechnical fashion. *Ruoho*, 685 N.W.2d at 456. The district court can make reasonable assumptions about where evidence is likely to exist even if no direct observation of the evidence has been reported. *See id*. The cooperating individual revealed that R.G. sold her methamphetamine from the apartment within the past week, and, the same day that police applied for the warrant, R.G. had left the apartment apparently carrying methamphetamine, baggies, and cash. These circumstances allowed the district court to draw the reasonable inference that R.G. was using the apartment as the hub of an ongoing drug business; so it also could reasonably infer that police might find there his inventory, transactional documents, or other evidence of the operation. This is customary reasoning. *See State v. White*, 332 N.W.2d 910, 911 (Minn. 1983) (holding sufficient nexus to the defendant's residence in part because large amounts of marijuana were discovered on his land); *State v. Yaritz*, 287 N.W.2d 13, 15 (Minn. 1979) (holding that nexus was established when the defendant went straight from his home to a drug sale immediately after arranging the sale by telephone). The district court had plenty of evidence linking the apartment and its likely contraband.

**Affirmed.**