*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1862**

State of Minnesota,
Respondent,

vs.

Kyle Mark Watson,
Appellant.

**Filed November 14, 2016
Affirmed
Kirk, Judge**

Scott County District Court
File No. 70-CR-14-15705

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

John G. Westrick, Westrick & McDowall-Nix, PLLP, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**KIRK**, Judge

Appellant challenges the district court's denial of his pretrial motion to suppress evidence found in his apartment, asserting that law enforcement conducted an illegal dog

sniff for narcotics and impermissibly relied on the results of that search to support the search warrant. We affirm.

## FACTS

On March 15, 2014, Officer Anderson of the Shakopee Police Department investigated a disturbance at 1055 Spencer Street South in Shakopee. On scene, a named citizen, who had been fighting with appellant Kyle Mark Watson, informed Officer Anderson that appellant sells marijuana and that he keeps it in a safe in his garage. A check of appellant's record revealed multiple drug-related convictions and that he resided at 1055 Spencer Street South, #103.

On March 17, Detective Affeldt of the Shakopee Police Department walked by appellant's garage and smelled an odor of marijuana. Deputy Sames of the Scott County Sheriff's Office responded to the garage with his certified police narcotics detecting canine partner, Buddy. Buddy alerted to the presence of a narcotic at the threshold of the garage. Buddy also alerted to appellant's apartment door in the common hallway of the apartment building.

On March 26, the Southwest Metro Drug Task Force executed a search warrant, which was obtained based on the above information, at appellant's apartment. Officers discovered marijuana, OxyContin, and drug paraphernalia in appellant's apartment.

Appellant was charged with fifth-degree possession of a controlled substance. An omnibus hearing was held to address appellant's motion to suppress the evidence discovered in his apartment, which challenged the legality of the dog sniff. The district court denied the motion, concluding that the common area of appellant's apartment

2

building is not curtilage, and therefore not subject to Fourth Amendment protections, and that the dog sniff was properly based on reasonable articulable suspicion. Appellant was found guilty of fifth-degree possession of a controlled substance.

This appeal follows.

## D E C I S I O N

**I.** **The warrantless dog sniff outside the door of appellant's apartment did not violate his constitutional right to be free from unreasonable searches and seizures.**

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). "If the underlying facts are not in dispute, we apply a de novo standard of review to a district court's denial of a motion to suppress evidence." *State v. Luhm*, 880 N.W.2d 606, 611 (Minn. App. 2016) (citing *Gauster*, 752 N.W.2d at 502). Here, the facts are not in dispute.

A dog sniff may be a search under the Minnesota Constitution. *See State v. Carter*, 697 N.W.2d 199, 211 (Minn. 2005). However, police only need reasonable articulable suspicion, not probable cause, to conduct a dog sniff in the common hallway of an apartment building. *State v. Davis*, 732 N.W.2d 173, 181-82 (Minn. 2007). Whether an officer has reasonable articulable suspicion is based on the totality of the circumstances. *Id.* at 182 (citing *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998)).

3

Here, the district court properly concluded that law enforcement had reasonable articulable suspicion to support the dog sniff outside appellant's apartment. The district court therefore properly denied appellant's motion to suppress evidence.

### A. The area outside of appellant's apartment, in the common hallway of the building, is not curtilage.

Appellant first argues that the dog sniff, conducted from the common hallway of his building, violated his constitutional right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV; Minn. Const. art. X, § 1. Appellant asserts that a search warrant, and therefore probable cause, was required to conduct the dog sniff because the area outside his apartment door is curtilage. Appellant cites *Florida v. Jardines*, 133 S. Ct. 1409 (2013), in support of his argument, but he fails to acknowledge that *Jardines* involved a dog sniff of the front door of a detached single-family home from the front porch of that home. *Jardines*, 133 S. Ct. at 1415 (recognizing that the front porch of a home is curtilage). By relying on *Jardines*, appellant suggests that the common hallway of his apartment building, abutting the door to his apartment, is entitled to the same Fourth Amendment protection as the front porch of a home. This is contrary to established Minnesota law. The common hallway of an apartment building is not considered curtilage under Minnesota law, and only reasonable articulable suspicion is required to justify a dog sniff. *Davis*, 732 N.W.2d at 181-82; *see also Luhm*, 880 N.W.2d at 616-17 (holding the area was not curtilage despite any ownership interest the occupant may have had in the unit and despite the building being secured).

4

The district court did not err when it concluded that the area outside of appellant's apartment door is not curtilage, and that only reasonable articulable suspicion was required to support the dog sniff.

**B.    The citizen informant's tip was reliable.**

Appellant next argues that the tip that ultimately led to the dog sniff in this case was unreliable and that law enforcement and the district court improperly considered and relied on the tip.  Appellant claims that the informant only alleged that appellant was selling marijuana to avoid criminal liability, which prevents his tip from being reliable. *See State v. Cox*, 294 Minn. 252, 254 n.1, 200 N.W.2d 305, 307 n.1 (Minn. 1972) (noting that information provided by a person with a criminal background or involvement in the reported event is not presumed reliable).  Without a reliable tip, appellant argues that law enforcement lacked reasonable articulable suspicion to support the dog sniff.

The state argues that the tip in this case was properly presumed to be reliable because "[w]e presume that tips from private citizen informants are reliable." *Davis*, 732 N.W.2d at 182.  "This is particularly the case when informants give information about their identity so that the police can locate them if necessary." *Id.* at 183.

When evaluating the reliability of a tip, this court must examine both "the informant and the informant's source of information and judge them against all of the circumstances." *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997) (quotation omitted).  Here, there is no evidence in the record to call the citizen informant's reliability, or the reliability of the information, into question.  The informant was identified when he provided the tip, and there is no evidence in the record that he was

5

involved in criminal activity. His tip was also corroborated by Detective Affeldt's observation of an odor of marijuana coming from appellant's garage and appellant's history of drug-related convictions. *State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998) ("An informant's reliability may be established by sufficient police corroboration of the information supplied, and corroboration of even minor details can 'lend credence' to the informant's information where the police know the identity of the informant.").

Based on these circumstances, law enforcement and the district court properly incorporated the tip into the determination that reasonable articulable suspicion existed to justify the dog sniff.

**C.** **There was a nexus between the information regarding drug activity in appellant's garage and possible drug activity in his apartment.**

Finally, citing *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983), and *State v. Souto*, 578 N.W.2d 744 (Minn. 1998), appellant argues that, even if the tip was reliable, the dog sniff outside his apartment was impermissible because the informant only reported that appellant had marijuana in his garage, not in his apartment. Therefore, according to appellant, there was no nexus connecting his apartment to drug activity.

The state asserts that appellant's reliance on *Souto* is misplaced because the *Souto* court was asked to determine whether probable cause existed to justify a search of the defendant's home, not whether reasonable articulable suspicion existed to support a dog sniff in a common hallway. *Souto*, 578 N.W.2d at 748. Appellant's reliance on *Gates* is also misplaced because the *Gates* court addressed whether probable cause existed to

6

support a search warrant, not whether reasonable articulable suspicion existed to support a dog sniff. *Gates*, 462 U.S. at 216, 103 S. Ct. at 2320-21.

The state also notes that a "direct connection" or "nexus" between the items sought and the place searched may be established by inference. *State v. Yarbrough*, 841 N.W.2d 619, 623 (Minn. 2014) (When establishing a connection between a place to be searched and evidence sought, "[a] nexus may be inferred from the totality of the circumstances . . . [including] the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items."); *State v. Ruoho*, 685 N.W.2d 451, 458 (Minn. App. 2004) ("Observations of a suspect's drug trafficking that occurs at a place other than a suspect's current residence can support probable cause for the issuance of a search warrant for the suspect's residence."), *review denied* (Minn. Nov. 16, 2004).

Here, appellant was reportedly engaged in selling drugs out of his garage, located on the same premises as his apartment. This information, combined with his drug-related criminal history, the mobility of marijuana and drug paraphernalia, the odor of marijuana (detected by law enforcement without Buddy) outside his garage, and Buddy's alert to the presence of a narcotic outside his garage, provided reasonable articulable suspicion that appellant may have drugs in his apartment as well as his garage. This reasonable articulable suspicion justified the dog sniff outside appellant's apartment. *See Ruoho*, 685 N.W.2d at 457 (noting that when persons are suspected of drug dealing, it is "reasonable to assume that they would keep evidence . . . in their place of residence," and that past involvement with drug activity is also relevant); *Luhm*, 880 N.W.2d at 621

7

(holding that reasonable articulable suspicion existed to support a dog sniff of a condominium doorway when the resident had reportedly been robbed of "approximately 25 pounds of marijuana and approximately $15,000" because that suggested that he "may be in possession of relatively large quantities of controlled substances").

Because law enforcement had reasonable articulable suspicion to justify the dog sniff, the results of the dog sniff were properly included in the search warrant affidavit, and the district court properly denied appellant's motion to suppress the evidence discovered in his apartment.

**Affirmed.**